Nov. Term,
1859.

SHIRK
v.
WILSON.

---

## SHIRK *v.* WILSON.

A writ of attachment is a lien upon property of the attachment-defendant, from the time it is placed in the sheriff's hands.

The claims of other creditors filed under an attachment suit, are, under our statute, liens from the time the original writ was placed in the hands of the sheriff, and take priority of judgments rendered after the sheriff receives the writ, even where such judgments were rendered before the filing of such claims.

The finding of a jury that an attachment-defendant, at the time the writ issued, had sold and transferred his property with intent to hinder and delay his creditors, is not sufficient to authorize a sale without appraisement, unless it be followed by an order by the Court to that effect.

As a general rule, a verdict is not effective for any purpose, unless followed by an adjudication of the Court.

But if in an attachment suit judgment be rendered in favor of several claimants, and several executions are issued against the same property, some of them collectable without appraisement, a sale without appraisement, or for less than two-thirds of the appraised value, will be held valid; for in such cases, the sale must be upon all the executions at once—no one of the judgments having priority.

APPEAL from the *Miami* Circuit Court.

DAVISON, J.—*Shirk* brought this action against *Wilson* to recover certain real property described thus: twenty-four

Tuesday,
November 29.

VOL. XIII.—9

feet off the south end of lot No. 36, in the town of *Peru*, in *Miami* county. The Court tried the issues, and found for the defendant, and having refused a new trial, rendered judgment, &c.

The case is this: On the first of *January*, 1855, three several judgments, each against *Philo Reed, Alvin Thayer*, and *William H. Constant*, were rendered in the *Miami* Court of Common Pleas, viz.: one judgment in favor of *John R. Neff* for 380 dollars, one in favor of *Isaac Walker* for 706 dollars, and one in favor of *John H. Constant* for 776 dollars. These judgments were collectable without relief, &c., and upon them executions were issued and levied on the premises in contest, which were, on the 29th of *August*, 1855, sold by the sheriff to the plaintiff, who received a deed pursuant to the sale. Under this deed he claims title.

In *October*, 1854, and prior to the rendition of the judgments to which we have referred, a writ of attachment, at the suit of *White & Co.*, was duly issued from the *Miami* Circuit Court against the said *Reed, Thayer*, and *Constant*, wherein it is alleged that they, the defendants, are indebted to *White & Co.* 609 dollars. This writ was placed in the hands of the sheriff, *October* 16, 1854. After this, in the same month, another writ of attachment, at the suit of *Cochran & Co.*, was issued from said Court against the same defendants, alleging therein that they are indebted to *Cochran & Co.* 523 dollars. The last-named writ went into the sheriff's hands *November* 21, 1854. Both writs were, on the 30th of *December*, in that year, levied upon the premises in controversy, with other real estate amounting, by appraisement, to 7,100 dollars. Also, on the 3d of *January*, 1855, they were levied upon personal property which was appraised at 1,443 dollars; and on the 10th of *March* in the same year, upon real estate appraised at 7,000 dollars. The premises in suit were valued by appraisement at 2,500 dollars. On the 16th of *February*, 1855, after the rendition of the above judgments, others, creditors of the attachment-defendants, with a view of becoming parties to the attachment suits, filed their respec-

tive claims against the defendants in said Court, in the mode prescribed by the statute. At the *March* term, 1855, judgments were rendered in the original attachment suits, and, also, upon the claims filed under them as follows:

Judgment in favor of *White & Co.*, for.......... $422 62
Judgment in favor of *Cochran & Co.*, for....... 354 35
Judgment in favor of *Hope, Gradon & Co.*, for.. 1,354 09
Judgment in favor of *Arbuckle* and *Moore*, for.. 173 00
Judgment in favor of *Henry Cunningham*, for... 434 00
Judgment in favor of *Norton* and *Jewet*, for..... 154 34
Judgment in favor of *Atwood, Burns*, and *Farmer*, for................................ 307 00

The judgment in favor of *White & Co.*, as also the one in favor of *Cochran & Co.*, do not order the property levied on to be sold without appraisement. The other judgments contain such order. A jury impanneled in one of the attachment suits found that the defendants, at the time the several writs of attachment were issued, had sold and transferred the same property with the fraudulent intent of hindering and delaying their creditors.

Executions were duly issued on all the judgments in the attachment suits, and upon them the property in dispute was, on the 16th of *February*, 1856, sold by the sheriff, without appraisement, to the defendant for 500 dollars, that sum being less than two-thirds its appraised value. Pursuant to this sale, the defendant received a sheriff's deed, under which he claims title.

The judgments upon which the plaintiff rests his title were rendered *January* 1, 1855, and were, at their date, liens on the property sold, and the sale to him under them was regular and legal. He was, therefore, entitled to recover in this action, unless the defendant has shown a valid sale of the premises to himself, in virtue of a prior lien. Has he done so?

As we have seen, the writs of attachment were placed in the sheriff's hands *November* 25, 1854, and it must be conceded that they, at that date, became liens on the property. 2 R. S. p. 66, § 165. But the claims of other creditors, under the original attachment suits, were not filed

until *February*, 1855. Hence, it is insisted that these claims could be deemed liens only from the time they were filed, and that, as to them, the judgments rendered on the first of *January* are prior liens.

The statute says, "Any creditor of the attachment-defendant, upon filing his affidavit, &c., may, at any time before the final adjudication of the suit, become a party to the action, file his complaint, and prove his demand against the defendant." And that "the money realized from the attachment shall, under the direction of the Court, after paying all costs, &c., be paid to the several creditors, in proportion to the amount of their several claims as adjusted." *Id.*, pp. 70, 71, §§ 186, 192.

This enactment evidently places all the creditors before the Court, at the final adjudication of the attachment suit, whose claims have been adjusted, upon an equal footing; and, further, it makes all of them parties to the original proceeding. This could not be, unless the original attaching process creates a lien upon the property attached, not only for the amount of the debt for which it was issued, but also for all valid demands that may be thereafter filed under such process. We have been referred to *Zeigenhager* v. *Doe*, 1 Ind. R. 296; but that decision was made in reference to the attachment law of 1843, and that law did not authorize a creditor who had filed his demand subsequently to the commencement of the attachment suit, to become a party to the action. R. S. 1843, p. 768, § 25. Moreover, the Court, in the case cited, expressly withheld an opinion in regard to the question, "whether the lien of subsequent claims relates back to the levying of the attachment." As the attaching process, in this case, was in the hands of the sheriff before the date of the judgments relied on by the plaintiff, it seems to us that these judgments cannot be regarded liens prior to that of any creditor whose claim was adjusted in the attachment suit.

The appellant, however, assumes another ground. He says that the sale to the appellee—the sheriff having sold the property for less than two-thirds its appraised value—was a nullity. While on the other hand, it is contended

that the sheriff had the right to sell without regard to the
appraisement, for the reason that the jury had found that
the defendants, at the time the writs of attachment issued,
had sold and transferred the property with intent to hinder
and delay their creditors.   It is enacted that property thus
transferred shall be sold without .appraisement.   But it is
also enacted that "when a judgment is to be executed
without any relief from appraisement laws, it shall be so
ordered in the judgment." 2 R. S. pp. 123, 138. §§ 381,
456.  It seems to follow that the verdict of a jury alone, is
not sufficient to establish such fraudulent intent.   Indeed,
a verdict will not, generally speaking, be held effective for
any purpose, unless followed by an adjudication of the
Court.   In *Doe* v. *Craft*, 2 Ind. R. 359, it was held that a
sheriff's sale made without appraisement, where the judg-
ment did not so direct, was void.  The verdict, as it stands
in the record, is not operative for any purpose.  But in the
case before us, there were seven executions.  Two of them
were issued upon judgments in which there was no order
directing a sale without appraisement, and which were in
favor of the original attaching plaintiffs, and founded on
claims which did not waive the appraisement laws.   The
property was sold on all the executions, for less than two-
thirds the appraised value.   Can this sale be sustained?

In *Harrison* v. *Stipp*, 8 Blackf. 455, it was held that
"Where a sheriff has in his hands several executions (the
laws as to a sale under them being different), and the real
estate levied on is divisible, he should commence with the
execution first to be satisfied, and sell enough of the pro-
perty, under the law governing such sale, to satisfy that
execution; and that he should afterwards sell under the
other executions, in their order, according to the same rule,
until all are satisfied, or the property exhausted.  But if
the property is not susceptible of division, the same should
be sold under the execution first to be satisfied."

This decision is cited in argument, but it is not an au-
thority in point, because, in the case at bar, the judgments
in attachment have no priority to each other, and out of
the proceeds of the sale of the property attached, they are

Nov. Term,
1859.

to be paid in the proportion of their several amounts; and the result seems to be, that the sheriff, in this instance, was bound to sell on all the executions at the same time; otherwise the attachment law, under which the proceedings were instituted, could not be executed in accordance with the intent of the legislature. He might, it is true, have conducted the sale in reference to the appraisement laws; still, it must be conceded that the plaintiffs, whose judgments contained the order directing a sale without appraisement, had rights proper to be subserved; and it seems to us that a sale consistent with those rights would not, in view of the case made by the record, conflict with any prescribed duty of the sheriff, and ought to be sustained.

There is, however, a fatal error in the record. The plaintiff sued for, and, in support of his action, showed a *prima facie* title to, twenty-four feet off the south end of lot 36, in the town of *Peru;* while the defendant, in his defense, proved title to nineteen feet only off the south end of the same lot. The plaintiff was, therefore, under the evidence, entitled to recover five feet of the premises in contest. Hence, the verdict is not sustained by the evidence. It should have been in his favor for that portion of the south end of lot 36 not covered by the defendant's title. For this error, the judgment must be reversed.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

*H. J. Shirk, N. O. Ross,* and *R. P. Effinger,* for the appellant.

*J. Caven,* for the appellee.