#### IN THE

# SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1866, IN THE FIFTIETH YEAR OF
THE STATE.

---

### STURGIS and Others *v.* ROGERS and Others.

ATTACHMENT.—GARNISHEE.—APPEAL BOND.—A instituted proceedings in
attachment against B and C, and caused a summons to be issued against
the *Central Bank* as a garnishee, upon an affidavit alleging that the bank
was indebted to C. The answer of the bank to the process of garnishment
was filed by P, "as president" thereof, and admitted an indebtedness to C.
Afterwards D and E also began proceedings in attachment against the
same defendants, but it did not appear from the record that they became,
or asked to become, parties to the attachment proceedings instituted by A.
Judgment was rendered in favor of A against B and C, and also
against "P, president of the *Central Bank*," as garnishee, for the amount
owing by the bank to C, and an order was made "that after the payment
of the costs and the amounts that are due to the several plaintiffs in the
proceedings," the residue of the amount owing by the bank should be paid
to B and C. D and E also took separate personal judgments by default
against B and C. A transcript of all these proceedings was afterwards
filed in the Supreme Court, on appeal, upon which errors were assigned
as follows: "B and C v. A, as attaching creditor, and D and E."—"P, as presi-
dent of the *Central Bank* v. A." The above named P, as president, and B and
C come and say," &c. The appeal bond was made payable to A alone,

VOL. XXVI.—1.

and recited that "Whereas the said P had prayed an appeal," &c., "from a judgment rendered against him in favor of the above named obligees," &c. The judgment was afterwards affirmed in the Supreme Court. Suit by A, D and E upon the appeal bond.

*Held,* that under the general banking law the president was the only proper person to answer for the bank to the process of garnishment.   Page 8.

*Held,* also, that if the judgment against the bank should have been in form against "P, as president of the *Central Bank,*" instead of "P, president of the *Central Bank,*" the mistake must be treated as a clerical omission, which would not invalidate the judgment.   Page 8.

*Held,* also, that though the appeal was by P, as president of the bank, from the judgment of A only, yet as the supersedeas operated to stay all proceedings on the judgment, the appeal bond, though in form to A only, would have inured also to the benefit of D and E, if they had become parties to the attachment suit of A in such a manner as to make the judgment against the garnishee available to them.   Page 8.

*Held,* also, that as the record fails to show that D and E ever became parties to the attachment suit instituted by A, the judgment against the garnishee was not available to them. The mere statement of the clerk in the transcript, after the record of A's suit, that "the following cases are filed as claims under said attachment," followed by a record of their suits, was not sufficient to make them parties to that suit.   Page 9.

*Held,* also, that while there was but one transcript filed in the Supreme Court, there were, in fact, two appeals. One by P, as president, from the judgment against the bank as garnishee, and one by C and D from the several personal judgments against them, and the bond filed was applicable to the appeal by the garnishee only.   Page 10.

*Held,* also, that there could be no recovery by D and E upon the appeal bond, because they were not beneficially interested in the judgment against the garnishee from which the appeal was taken.   Page 12.

*Held,* also, that the erroneous recital in the appeal bond that judgment had been rendered against P, (as an individual,) did not affect the validity of the bond, under the statute.   Page 11.

*Held,* also, that the statute, (2 G. & H., sec. 790, p. 333) was intended to cure defective bonds, and to impart to them the effect which they would have by law if perfect, but it cannot be so applied as to give to an instrument an effect distinctly different from that which was actually contemplated by the parties, or to impose a liability which the obligor never intended to assume.   Page 12.

*Held,* also, that the validity of A's judgment could not be called in question in the suit on the bond, the judgment of the Supreme Court affirming the judgment below being final and conclusive on that question.   Page 14.


APPEAL from the *Marion* Common Pleas.

FRAZER, J.—This was a suit by *Rogers* and several others

against *Solomon Sturgis* and *John P. Usher* upon the following bond:

"Know all men by these presents, that we, *O. Bowen, Solomon Sturgis* and *John P. Usher*, are held and firmly bound unto *John C. Rogers*———————in the penal sum of $50,000, to be paid to them, the payment whereof," &c., "dated *May* 28, 1858."

"The condition of the above obligation is such that whereas the said *Bowen* has prayed an appeal to the Supreme Court of *Indiana* from the judgment of the *Marion* Circuit Court, lately rendered against him, in favor of the above obligees, now if he will duly prosecute his appeal to effect, and abide by and pay the judgment and all costs which may be rendered or affirmed against him, then this bond shall be void, else to remain in full force and virtue." (Signed)

"SOLOMON STURGIS,
"J. P. USHER."

"Filed and approved by me, *May* 25, 1858.
"WM. B. BEACH, *Clerk.*"

It was averred in the complaint that the plaintiff, *Rogers*, in the *Marion* Circuit Court, in a proceeding by attachment, had on the 24th of *January*, 1856, recovered a judgment against *Rowland Ellis* and *William Sturgis* for $2,920 40 and costs, and that the other plaintiffs had prosecuted their claims against the same parties under said attachment proceeding instituted by *Rogers*, and had respectively recovered judgments at the same time, to-wit: *Saybrook*, for $1,994 17; *McGregor*, for $8,985 36; *Deutle, Croll & Croll*, for $4,123 48, and *Campbell*, for $367 42. It was further alleged that in that proceeding one *Ozias Bowen*, president of the *Central Bank*, was served with process as a garnishee, so that jurisdiction was obtained by the court of him as such garnishee; that upon his answer as such, and proof made, it was found by said court that the sum of $36,496 03 was due from said garnishee to the principal defendants, *Ellis* and *Sturgis*, and it was thereupon adjudged that said plaintiffs

recover of said *Ozias Bowen*, president of the *Central Bank*, the last mentioned sum, and that after paying costs, and the amounts due to the several plaintiffs in that proceeding, the residue should be paid to the principal defendants, *Ellis* and *Sturgis*. It was further averred that all of said judgments remained wholly unpaid, and that the attachment and gar- nishee defendants afterwards prayed an appeal to this court from the aforesaid judgments, and took such appeal, and presented to the clerk of this court and filed in his office the above appeal bond, and procured him to approve it, and thereupon a supersedeas issued, restraining the collection of all of said judgments; that the bond is defective in that the names of all the plaintiffs save *Rogers* were omitted to be inserted in it, though a blank space was left for that purpose. It was alleged that the judgment of the *Marion* Circuit Court appealed from was in all things affirmed by this court, and that the judgments so affirmed still remained wholly unpaid, wherefore there was a breach of the condi- tions of the bond. A demurrer to the complaint was over- ruled, and this. is assigned for error. We perceive no reason for questioning the correctness of that ruling, and none is suggested in the argument.

The answer was in twelve paragraphs, to the first, third, fourth, fifth, sixth and ninth of which demurrers were re- spectively sustained. The questions arising upon these demurrers are presented here.

The first paragraph of the answer was to the suit by *Rogers*, and alleged that *John C. Rogers*, the original plain- tiff, was dead at the commencement of the suit.

The record shows that before the answer was filed, it was suggested of record that *John C. Rogers*, the original plain- tiff, had died after the commencement of the suit, and that thereupon *William H. Rogers*, his executor, was substituted as a plaintiff by leave of the court. No exception was taken to this action of the court by the defendants, and indeed no objection appears to have been made to it. The proper party having thus become a plaintiff without

objection, it was too late to make any question as to *John C. Rogers* being dead when the suit was commenced. It is therefore needless to determine whether, under different circumstances, the paragraph would have been good, pleaded with other paragraphs in bar of the suit.

The third paragraph of the answer averred that the appeal in which the bond was filed was taken by the defendant *Solomon Sturgis*, from a judgment rendered in favor of the plaintiffs against *Bowen*, without the knowledge or consent of *Bowen;* that the appeal was null and void, and gave the Supreme Court no jurisdiction. A transcript of the record filed in this court on the appeal is annexed to the paragraph and made a part of it. The fourth paragraph alleged that the judgments of the *Marion* Circuit Court against *Sturgis, Ellis* and *Bowen* were void for the want of jurisdiction of the person of either said *Sturgis, Ellis* or *Bowen*, and a transcript of the proceedings and judgments was made part of the paragraph. The fifth alleged that the judgment against *Bowen* was wholly unauthorized and unwarranted, and the sixth alleged that the bond was filed in an appeal by *Bowen* from a decision and judgment of the *Marion* Circuit Court made on the application of *William Sturgis* to set aside a judgment by default against *Bowen*, and it is claimed that the bond and all proceedings under it are void, because the appeal did not confer upon this court jurisdiction of the cause. A transcript of all the proceedings was also made part of the fifth and sixth paragraphs. The ninth alleged that the bond, except as to the plaintiff *Rogers*, was without consideration, for the reason that the judgments of the other plaintiffs, rendered in the *Marion* Circuit Court, were obtained without due notice to either *Ellis* or *Sturgis*, the defendants thereto, and without appearance, and that the judgment against *Bowen* was also void, and the appeal therefore gave this court no jurisdiction. A transcript of the proceedings of the *Marion* Circuit Court was also made a part of the ninth paragraph.

The transcript filed with the answer shows an attachment suit commenced *September* 21, 1855, by *Rogers* against *Sturgis* and *Ellis*, and a summons issued against the *Central Bank* as garnishee and served upon its cashier, upon an affidavit that the bank was indebted to the defendant, *William Sturgis*. This summons was returnable to the *October* term of the *Marion* Circuit Court, (fifth *Monday* of *October*,) as was also the summons against the principal defendants, which was served on *Ellis* at his residence in *Cincinnati, Ohio*, on the 22d of *September*, but was never served on *Sturgis*, so far as appears. On the third day of the *October* term of that court, (*October* 31,) *Sturgis* appeared to and answered the complaint of *Rogers*. On the next day a summons issued against *Bowen* as garnishee, which was served on the same day, and was returnable to the *May* term of the court. On the following day the answer of the bank as garnishee was filed by *Bowen* "as president" thereof. This answer shows that *Sturgis* was the owner of $40,000 of the capital stock of the bank and was indebted to it about $3,300. *Bowen* never answered the garnishee process against him as to his individual indebtedness. On the 19th and 20th of *December* the other plaintiffs filed complaints and claims "under said attachment suit," as is stated by the clerk in making up the transcript, but it does not appear by the record that they, or any of them, became or applied to become parties to the original action commenced by *Rogers*. They filed affidavits and undertakings, alleging in the former the non-residence of *Ellis* and *Sturgis*, and their complaints are as usual in independent suits. On the 25th of *January*, 1856, *Rogers* replied to the answer of *Sturgis*, and a default was, on his motion, obtained against both *Sturgis* and *Ellis*, and a judgment was rendered in favor of *Rogers* for $2,920 40. And, upon "evidence of the plaintiff in reference to the indebtedness of the garnishee, *Ozias Bowen*, president of the *Central Bank*," the court found that the sum of $36,496 03, "admitted by the answer of said garnishee," is due from said garnishee to *Ellis* and *Sturgis*, and a proper judgment was accordingly

entered for that sum in favor of *Rogers* against "*Ozias Bowen*, president of the *Central Bank*," with an order "that after the payment of the costs of this proceeding, and the amounts that are due to the several plaintiffs in the proceedings," &c., the residue be paid to *Ellis* and *Sturgis*. The other creditors, plaintiffs here, took their separate judgments against *Sturgis* and *Ellis* by default at the same term, on the 23d of *January*, 1856. At the next term of the *Marion* Circuit Court, on the 14th of *July*, 1856, *Ellis* and *Sturgis* appeared and moved to set aside the judgment against the garnishee, upon the ground that it was for a less sum than was due. This motion was overruled and the ruling excepted to.

A transcript of all the proceedings was filed in this court on the 25th of *May*, 1858, with the assignment of errors thereon thus: "*William Sturgis* and *Rowland Ellis* v. *John C. Rogers*, as attaching creditors," and (here naming all the plaintiffs in the present case.) "*Ozias Bowen* as president of the *Central Bank of Indianapolis* v. *John C. Rogers.*"

"The above named *Bowen*, as president, and *Ellis* and *Sturgis* come and say that in the foregoing record and proceedings there is manifest error," &c. The bond sued on was filed at the same time, and an order of supersedeas was granted as follows:

"WILLIAM STURGIS and ROWLAND ELLIS

*v.*

JOHN C. ROGERS et al.

"By a judge of the Supreme Court.

"Ordered that execution and all proceedings on the judgment below be stayed for three years unless otherwise ordered by this court, so soon as the appellants shall have executed bond according to law.

"J. M. HANNA, *Judge S. C.*"

On the 1st of *December*, 1860, there was a determination of the appeal in this court, as appears by a copy of the opinion and judgment annexed to the complaint. Though numerous errors had been assigned, it was determined that the only

question which was then presented in the record, and which could be considered here, was upon the overruling of the motion to set aside the judgment against the garnishee. The judgment of this court was "that the judgment in the above entitled cause be in all things affirmed, with one per cent. damages." The opinion is reported in 16 Ind. 18.

We have thought proper to state so much of the record quite fully, that the application of the principles of law which it seems to us govern the case may be readily seen.

The *Central Bank* was an institution organized under our general banking law. The 24th section of that act authorizes all suits against any such banking association to be brought "against the president thereof." In his official capacity he is, by law, the representative of the bank in all judicial proceedings, either in its behalf or against it. 1 G. & H. 129, 130. In that capacity he was the only proper person to answer when the bank was garnisheed. The answer was filed by him "as president," and was concerning the liability of the bank exclusively, and it was upon that answer, and evidence offered by *Rogers*, that judgment against the garnishee, was obtained, in form against "*Ozias Bowen*, president of the *Central Bank*." To regard this as a judgment against *Bowen* in his private capacity we must disregard the whole tenor and obvious meaning of the record before us. If it should have been in form "*Ozias Bowen*, as president," &c., we can not but plainly perceive that there was a mere clerical omission, which can not, under the imperative provisions of our code, operate to the detriment of any party in this court.

The assignment of errors showed that *Bowen*, as president of the bank, appealed, and that that appeal by him was only as against *Rogers*. If the judgment against the garnishee was available to other parties than *Rogers*, it is too clear for controversy that the garnishee's appeal from it, if followed by a supersedeas, would necessarily affect them all. Though standing in form in the name of *Rogers*, yet

it must inure, in substance, to the joint benefit of all the attaching plaintiffs who had become parties to the suit, and had obtained valid judgments against the principal defendants. Though the garnishee appealing might not wish to question the correctness of the proceedings and judgment against him as to any plaintiff but *Rogers,* (and if *Rogers'* judgment against the principal defendants was void, perhaps he must have questioned it, in order to claim protection from liability to his creditors, the defendants in the attachment,) yet the judgment was an entire thing, incapable of subdivision in its enforcement, and a stay of proceedings upon it must of necessity operate upon the whole of it. Of course, then, the bond required by law to obtain such stay of proceedings must be for the benefit of all who had a beneficial interest in the judgment appealed from.

To determine whether any of the present plaintiffs but *Rogers* can maintain a suit upon the appeal bond it is important to inquire whether they became parties to the attachment suit commenced by *Rogers.* This must be ascertained exclusively by an inspection of the record. It can appear in no other way. Those persons might have become parties to that suit so as to share with *Rogers* in the judgment against the garnishee, (2 G. & H., § 186, p. 147,) or each of them might have chosen to commence an independent suit. Nothing upon the subject can be legally inferred from the fact that they filed their complaints and took their judgments at the same term at which the suit by *Rogers* was pending and determined, for that they might lawfully do without becoming parties to his suit. Nor are we aided by the statement of the clerk made in the transcript, after the record in the *Rogers* case, that "the following cases are filed as claims under said attachment," followed by transcripts of the records of those other cases. The fact as to who have become parties to a suit in a court of record cannot rest merely in the memory of the clerk. The record itself must disclose it. The judgment against the garnishee,

though in favor of *Rogers* alone, but containing an order for the payment out of the amount thereof of the several sums "that are due to the several plaintiffs in the proceedings," is the only indication in the entire record that *Rogers*, was not the sole party plaintiff in that suit. But this alone is obviously insufficient, for it fails to show who those other parties were. And as the whole transcript is made part of the answer, and it discloses no party plaintiff but *Rogers*, there is no method of avoiding the conclusion that *Rogers* was legally the only party plaintiff to the attachment suit against *Sturgis* and *Ellis*, and the only party before us, therefore, having an interest in the judgment against the garnishee in that suit. The appeal by "*Bowen* as president" was and could only be from the judgment against the garnishee. In that appeal he chose, as appears from the assignment of errors, to regard *Rogers* as the only party adverse to him in that judgment, and we have just seen that in so doing he was clearly correct. At the same time *Ellis* and *Sturgis* appealed. There were two appeals, though all the appellants filed the same transcript, and, as separate appellants, jointly assigned errors. These appeals were therefore docketed and disposed of as one cause in this court. But under our practice a bond is not essential to an appeal—its office being merely to stay proceedings upon the judgment appealed from. The garnishee might give bond and stay the proceedings upon the judgment against him as such, while *Ellis* and *Sturgis* might not care to stay the proceedings upon the personal judgments against them. Indeed, in the case before us, as they were non-residents, and the writ of attachment which had issued was returned "no property found," it is not deemed probable that they would care to obtain a supersedeas of the judgments against them, provided the judgment against the garnishee was superseded, for it would seem probable that it was out of the latter only that satisfaction of any of the former could be obtained.

The bond sued upon, and copied in a previous part of this opinion, was given, and it seems a natural and pertinent question in this place, What is its legal effect?

The statute, section 790 of the civil code, enacts that such a bond shall not "be void for want of form or substance, or recital or condition, nor the principal or surety be discharged, but the principal and surety shall be bound by such bond," &c., "to the full extent contemplated by the law requiring the same, and the sureties to the amount specified therein."

The bond erroneously recited that a judgment had been rendered against *Bowen*, (as an individual,) from which he had prayed an appeal, when in fact no such judgment had been rendered, as we have seen, and no such appeal therefrom was or could have been taken. The judgment was in legal effect against the bank, and the appeal was taken by the bank, though in name and form the judgment was against *Bowen*, president, &c., and the appeal by *Bowen* as president. It is easy to see that the recital is defective, and therefore cured by the statute. It is not possible to doubt that the sureties intended to become responsible upon an appeal from the judgment which was actually rendered against the garnishee. That the statute should hold them to that liability would be eminently just, and that its terms would have that effect at least, is, we think, a proposition too clear for controversy.

But the judge's order to stay proceedings was not made, in terms, applicable to the appeal by the garnishee, nor to the judgment against him. It was made in the appeal by "*William Sturgis* and *Rowland Ellis* v. *John C. Rogers et al.*," and related to all the judgments brought here for review by the appellants, and their appeal was from all the judgments rendered in favor of the present plaintiffs. Of course a stay of proceedings upon *Rogers'* judgment would also, incidentally, stay proceedings upon the judgment against the garnishee. It must not be omitted to say that, in practice, the judge's order precedes the filing of the bond,

and . becomes operative only upon the occurrence of the latter event, and when a copy of it is certified to the court from which the cause has been appealed. 2 G. & H., 274. In form, the judgment from which *Bowen*, as president, had appealed, and to which the appeal bond, by its terms, was plainly intended to apply, was not included among the judgments superseded. But still that judgment was, by consequence, as effectually stayed as if the supersedeas had, in terms, been applicable to it. The thing sought, a stay of proceedings upon the judgment, was obtained. This must be regarded rather than the mere form by which it was accomplished. As that judgment was affirmed by this court, the obligors in the bond became liable to *Rogers*, the attaching plaintiff, to the extent of his judgment against the attachment defendants. But no liability accrued to the other plaintiffs in the present cause, for the reason that they had never become parties to the attachment suit instituted by *Rogers*, and therefore had no interest whatever in the judgment against the garnishee which was affirmed. It follows that the ninth paragraph of the answer constituted a perfect bar to any recovery by any of the plaintiffs except *Rogers*. There was no error in sustaining the demurrer to it, nevertheless, for the same matter was available under the general denial, which was also pleaded. The rulings upon the demurrers to the third, fourth, fifth and sixth paragraphs were correct, inasmuch as those paragraphs were pleaded in bar of the entire suit, yet disclosed nothing to bar a recovery by *Rogers*.

The conclusion already expressed of course proceeds upon the ground that the appeal bond was applicable to the appeal by the garnishee only, and not to the appeal by *Sturgis* and *Ellis* from the several judgments rendered against them in favor of the several parties who are plaintiffs in the present suit. Such is the opinion entertained by the court. The statute already cited is, it must be conceded, exceedingly comprehensive. It was intended to cure defective bonds, and to impart to them whatever they

lacked of sufficiency in form, substance, recital or condition, the effect which they would have by law, if perfect in those particulars. But there is nothing in the language necessarily indicating a design to impart to the instrument an effect distinctly different from that which was actually contemplated by the parties who executed it, or to impose upon them a liability which obviously they never intended to assume. It would be an anomaly in legislation if it was intended to make the obligors of a bond executed plainly for the purposes of an appeal by A, the involuntary sureties for B, in an appeal by him from a judgment to which A, was not a party. This, instead of supplying defects in a contract intended to be made, which is all that the statute attempts by its terms to do, would be creating a new and very different contract, and binding parties to perform it, without so much as consulting them. Such an interpretation of a statute will be given by the courts only when it will not possibly admit of any other. It is due to the learned counsel for the appellees to say that we have not understood them to contend that the obligors are liable otherwise than for the judgment affirmed against the garnishee. We have considered this question because, in the view which we have taken of the case, its consideration was necessary to a correct judgment.

What we have said concerning the ninth paragraph of the answer is applicable to the assignment of error upon the refusal of the court below to grant a new trial. There was a finding in favor of the several plaintiffs for the amounts of their respective judgments against *Sturgis* and *Ellis*, with interest thereon. The transcript of those proceedings against *Sturgis* and *Ellis* offered in evidence, was the same as that annexed to the answer, the effect of which we have already considered. Inasmuch as *Rogers* was the only plaintiff in the attachment, the other plaintiffs in this suit had no interest in the judgment rendered therein against the garnishee, and consequently could not recover upon the bond. As to them, the finding was contrary to the evidence,

and a new trial should have been granted. As to *Rogers*, the finding was right, unless his judgment against *Sturgis* and *Ellis* was altogether void, as is insisted.

But it is urged that all inquiry as to the validity of that judgment is closed by the judgment of this court affirming it on appeal. That may be so. Indeed, it seems to us to be a proposition too clear to need much illustration. On appeal this court undoubtedly had jurisdiction of the subject matter, of the parties and of the question, it being raised by the assignment of errors, and by law it had power to affirm or reverse. It affirmed. A judgment of a court of *nisi prius* rendered under such circumstances could never be called in question collaterally before the same or any other court. The law is so settled, if anything can be deemed at rest. It must be so also as to the judgments of the court of last resort, where it has jurisdiction, though it mistake the law and err in its judgment. The rule is as essential in the one case as in the other to the repose of society, and the stability of private rights. To say that a judgment of affirmance here, within the power of the court to render, when the parties are before the court, and the case is brought within its lawful jurisdiction, is not a final end of that litigation, would be a startling doctrine, asserting that a cause can never have a final and binding determination. We can therefore only say that that judgment has been affirmed by this court, acting within its jurisdiction, and the question of its validity thus forever settled in its favor.

A question is made as to the admissibility of parol evidence in favor of the plaintiffs, other than *Rogers*, showing that the bond sued on was filed in the appeal already spoken of, and that a blank was left in it to insert their names. We think the admission of the evidence, though perhaps it was unimportant under the allegations of the complaint, was not an error which should reverse the cause.

The judgment in favor of the appellee *Rogers* is affirmed, with costs. The several judgments in favor of the

other appellees are reversed, with costs, and as to them the cause is remanded for a new trial.

*J. E. McDonald, A. L. Roache* and *J. P. Usher,* for appellants.

*T. A. Hendricks* and *O. B. Hord,* for appellees.