Ryan *v.* Burkam *et al.*

RYAN *v.* BURKAM ET AL.

ATTACHMENT.—*Filing Claims under Original Proceeding.—Garnishee.*—A writ of garnishment, issued and served under an original attachment proceeding, holds all money or property belonging to the attachment defendant, in the hands of the garnishee at the time the writ is served, not only for the original plaintiff, but for all creditors that may, under the statute, file claims under the original proceeding before the final adjustment thereof.

SAME.—Where, after an attachment proceeding has been commenced, a creditor of the attachment defendant files a complaint, affidavit, and undertaking, and there is anything in the record which shows an intention to file under the original proceeding, and not to commence an independent action, such creditor will be held to have become a party to the original action.

SAME.—*Affidavit.*—The affidavits of different creditors filing an under attachment proceeding need not be based on the same cause of attachment.

SAME.—*Garnishee.— When not Discharged.*—A person who has been served as garnishee in an original attachment proceeding, and who at the time of service has money in his possession belonging to the attachment defendant, on being informed by the attorney of the plaintiff that the proceedings have been compromised and dismissed, and by such delivery be released from his liability as garnishee to another creditor of the defendant who has commenced proceedings by filing under the original suit, though the garnishee has not had actual notice of such filing.

SAME.—*How Garnishee may be Discharged.*—A person who has been served as garnishee may shield himself from liability by delivering money or property in his possession to the officer serving the writ, or by paying the money into court. If he fails to do this, he must retain the money or property until the final adjustment of the suit.

SAME.—*Dismissal of Original Proceeding.*—The dismissal of an attachment proceeding by the original plaintiff is not a final adjustment, if other creditors have filed under the same.

SAME.—*Time of Lien.*—The claims of creditors who commence their action by filing under an original attachment suit are liens on money or property in the possession of a person served as garnishee from the time of the service of the original writ.

BILL OF EXCEPTIONS.—A bill of exceptions when properly signed and in the record imports absolute verity.

APPEAL from the Wayne Circuit Court.

BUSKIRK, J.—The record in this cause discloses the following facts :

On the 16th day of December, 1859, Charles B. Burkam

commenced proceedings in attachment against William D. Burkam and Alexander Dasher, before A. W. Ray, a justice of the peace of Wayne county. The action was based upon an account. The affidavit for attachment charged that Dasher was about to sell, convey, and otherwise dispose of his property subject to execution, with the fraudulent intent to cheat, hinder, or delay his creditors. The proceedings were based upon the 6th clause of section 156, 2 G. & H. 137.

The undertaking was filed and approved, December 17th, 1867. On the same day that the affidavit for attachment was filed, an affidavit was filed on behalf of the plaintiff, averring that the American Express Company had property of the defendant Dasher in its possession, and praying a writ of garnishment against the said express company.

On December 17th, 1867, the summons against Burkam and Dasher was returned served by reading to Burkam, and on Dasher by leaving a copy at his residence. The writ of garnishment was returned, on the same day indorsed thus: " Served by reading to Mr. Dalyell, agent of the American Express Company at Cambridge City, Indiana, and have attached under this writ a package supposed to contain money in his hands, addressed to Alexander Dasher. John Williams, Constable." On December 18th, 1867, the constable made another return, which reads thus : " Served by reading to Mr. Dalyell, agent of the American Express Company at Cambridge City, Indiana, this the 18th day of December, 1867. John Williams, Constable."

On December 18th, 1867, Charles B. Burkam filed a claim for about three thousand dollars, under the first attachment, filing in substance the same affidavit and a second undertaking ; whereupon the justice of the peace immediately certified the case to the circuit court, in accordance with the act of March 4th, 1859, 2 G. & H. 148.

On the 28th of December, 1867, after the cause was in the circuit court, the appellant, Thomas F. Ryan, filed his

complaint against the same defendants, Burkam and Dasher. The heading of this complaint was as follows:

"Thomas F. Ryan
    v.     }    In Wayne Circuit Court.
Burkam *et al.*

"Action and attachment and garnishment commenced before Esq. Ray, and certified to Wayne Civil Circuit Court."

The complaint then proceeds to state the cause of action. The action was based on two notes, amounting in the aggregate to something over twenty-six hundred dollars. With this complaint the appellant filed his affidavit and undertaking. The undertaking is in the usual form. The affidavit charges non-residence on the part of Burkam, and that the defendants have sold and are about to sell property, etc., with the intent, etc., covering both the fifth and sixth causes laid down in the statute. The affidavit makes the same averments as to the American Express Company's holding money belonging to Dasher, as in the original affidavits. The complaint contains these words: "And said Thomas F. Ryan prays that he may be made a party to the above entitled cause," etc. The clerk issued a new summons in attachment and a new writ of garnishment.

On the night of December 28th, 1867, being the night of the same day on which the appellant had filed his papers as above stated, the attorneys for the plaintiff and the defendants in the original action made an arrangement by which the original suit was, in a certain contingency, to be dismissed; and between ten and eleven o'clock at night they filed with the clerk of the Wayne Circuit Court the following paper:

"C. B. Burkam,
    v.     } Wayne Circuit Court, February
William D. Burkam      Term, 1868.
and Alexander Dasher.

"If I send no different word by M. Wilson, dismiss the above cause of this date.

"December 28th, 1867.     GEORGE A. JOHNSON,
        "Att'y for Pl'ff."

After the above paper was filed with the clerk, the said attorneys went to Cambridge City, where the defendant Dasher and Mr. Dalyell resided. After an interview with Mr. Dasher, he gave to Mr. Wilson, his attorney, an order to Mr. Dalyell, the agent of the American Express Company, to deliver up the package of money held by him and which had been garnished in his hands. The said attorneys then went to the depot and found Mr. Dalyell, to whom the order was presented. They informed Mr. Dalyell that the original suit had been compromised and the case dismissed. Mr. Dalyell delivered the package of money which was then and there opened and found to contain twenty-four hundred dollars. The money was equally divided between the said attorneys. Mr. Wilson testified that he had heard before he went to the clerk's office, that Mr. Ryan had commenced his proceedings, but that he did not make any inquiry in reference thereto or examine the records to ascertain whether it was true; and that he had made an agreement with Mr. Johnson, attorney for the plaintiff, at the time the order to dismiss was signed, that if there was any "fly-up," the dismissal should be set aside; and that it was just about 12 o'clock on Saturday night when they got the package of money from Mr. Dalyell and divided it, and it may have been Sunday morning.

The following entry was made by the clerk in the order book, December 28th, 1867.

"C. B. Burkam,　　　⎫
　　　v.　　　　　⎬In vacation, Dec. 28th, 1867. No. 2058.
Wm. D. Burkam.　⎭

"The plaintiff by his attorney comes and dismisses the above entitled cause, and files his dismissal in these words, to wit."

At the February term, 1868, of said court, the following entry was made:

"Charles B. Burkam　⎫
　　　v.　　　　　　⎬No. 2058.
Wm. D. Burkam *et al.*⎭

" The plaintiff by counsel comes and dismisses this cause at his own costs."

At the said term of court, Dalyell filed his written motion to be discharged as garnishee. The motion recited in substance the history of the case which we have given, and the discharge was mainly claimed upon the ground that he had in good faith supposed that the original action had been dismissed, and that he had delivered the money so believing, and without any knowledge of the commencement of the proceedings by Ryan. There does not seem to have been any ruling by the court on this motion, but this, in no manner, affects the real questions in the case.

After divers motions to quash the writs in attachment, and demurrers to pleadings, none of which need be particularly noticed, the case was put at issue upon the complaint and affidavit of Ryan.

Burkam answered,

1. That the notes sued on were executed by Dasher in his individual capacity, and not as a partner of defendant.

2. That the notes were executed without any consideration.

3. The general denial.

A demurrer was sustained to the first, and issue taken on the second.

Dasher answered, 1. *Non est factum*, under oath. 2. That the notes were without consideration. 3. The general denial.

Burkam and Dasher answered jointly,

4. That partnership between Burkam and Dasher was dissolved before the notes were given, and that Ryan knew the fact.

5. That said notes grew out of a fraudulent whiskey transaction, in which the United States government was defrauded out of her revenue.

The fourth paragraph was held good as the separate answer of Dasher. Issue was taken on all these answers.

Dalyell answered under oath. The substance was, that he had, on the night of the 28th day of December, 1867,

delivered to the attorney of Dasher the package of money in his hands as agent of the American Express Company; that the writ of garnishment issued in the proceedings by Ryan was not served on him until the 30th day of December, 1867; and that at that time he did not have in his hands or under his control any money belonging to either Burkam or Dasher.

Before the commencement of the trial, the appellant moved the court for leave to prosecute his action as a part of and under the original action, but the leave was refused, and he excepted and reserved the question by a bill of exceptions.

The cause was, by agreement, submitted to the court for trial.

The court found:

1. For Ryan as against Burkam and Dasher, in the sum of $3097.54.

2. For Ryan against Alexander Dasher on the attachment, and held the attachment good as to him.

3. In favor of the American Express Company and Dalyell, agent of such company.

No finding is announced as to Burkam on the attachment.

Appellant by his counsel at the time excepted to the finding in favor of the express company and Dalyell as agent thereof.

The appellant then moved the court for judgment against the American Express Company and James Dalyell, agent thereof, on the finding, but the motion was overruled, and appellant excepted.

The appellant then moved for a new trial, assigning for cause:

1. Error in finding in favor of American Express Company and James Dalyell, agent, because such finding was contrary to law and not sustained by the evidence.

2. Error in overruling appellant's motion for judgment on the findings against American Express Company and James Dalyell, agent thereof.

3. Error in finding in favor of Burkam on attachment.

4. Error in refusing to permit Ryan to prosecute this cause under the original attachment proceedings. The court overruled the motion, and the appellant excepted.

The court rendered judgment in accordance with the findings, and Ryan appeals to this court. The evidence is all in the record, and the motions and rulings thereon and exceptions taken are properly set forth in the bill of exceptions.

All the errors assigned in this cause, excepting the sixth, which has been waived, and all the exceptions taken to the rulings of the court below, may be considered and disposed of in the examination and decision of a single question, namely: Had the appellant the right to prosecute his claim under the original attachment proceedings? The answer to this question will be decisive of this case; for if the action and proceedings of the appellant were independent, then the finding and judgment of the court were correct, but if he filed under the original proceedings in attachment, the finding and judgment of the court were erroneous, and must be reversed. The primary inquiry is, did the appellant file his claim under the original proceedings in attachment? or did he commence a new and independent action?

There are certain facts established by the record, which are not controverted. We will first ascertain these facts, and then consider their effect upon the controverted questions.

1. The original proceedings before justice Ray were properly brought, were regular and in conformity with the statute, and were correctly certified to the circuit court.

2. The writ in garnishment of the American Express Company and Dalyell, agent thereof, was legally issued and served under the original attachment, before the case was certified to the circuit court, and was in full force and binding upon the express company, after the cause was certified to and docketed in the circuit court.

3. At the time the writ in garnishment was served, and at the time the cause was certified to the circuit court, and for some time thereafter, the American Express Company, by her agent, James Dalyell, had in her possession and under his control some twenty-four hundred dollars of money belonging to Alexander Dasher, one of the defendants in the original proceedings.

4. At the time that Ryan, appellant, filed his claim and instituted his proceedings, in the Wayne Circuit Court, the original attachment proceedings, including the garnishment of the express company and Dalyell, agent, were still pending in that court and had reached no "final adjustment."

5. Ryan's claim and complaint were filed in the same court, and against the same persons that were defendants in the original attachment proceedings.

6. Ryan filed the necessary complaint, affidavit, and undertaking required by the statute. His affidavit contains the same cause of attachment as that stated in the affidavit in the original proceeding, with an additional one, but that will not vitiate it as a filing under the original proceedings. The statute does not require the affidavits of different creditors to be based upon the same cause of attachment; it only requires each affidavit to comply with the law in setting up some statutory cause for attachment.

7. The attachment was sustained upon trial by the court as against Dasher, the defendant whose money was garnished in the hands of the agent of the express company.

8. In our opinion, it is very satisfactorily, if not conclusively, shown that Ryan filed his claim under the original attachment proceedings. This is shown by the heading of his complaint and the prayer at its close, heretofore set out. If he was commencing an independant action, why refer in his complaint to the proceedings commenced before Esq. Ray and certified to the Wayne Circuit Court? and why in the close of his complaint pray that he might "be made a party to the above entitled cause?" He was a party to his own cause. Then, what cause was it that he wanted to be

made a party to? It could not well refer to any other than the one mentioned in the heading of his complaint. The clerk of the court certainly understood that Ryan had filed his claim under the original proceedings, for he issued no new summons against the defendants, Burkam and Dasher. Burkam and Dasher so understood it; for they appeared and answered Ryan's complaint without the service of any new summons upon them; and their understanding is more fully shown by their motion to quash the writ of attachment, the third reason whereof is as follows: "3. Because the grounds of attachment are stated differently in this case from the case of C. B. Burkam, which has been dismissed, and, therefore, Ryan's cannot properly be filed under Burkam's claim." Dalyell, agent of the American Express Company, so understood it, as is shown by his motion and affidavit to be discharged as garnishee, in which several reasons are assigned, and among others, the same as the third reason urged by Burkam and Dasher why Ryan could not properly prosecute his claim under the original attachment proceedings; but his understanding is more fully and clearly shown by his answering Ryan's complaint; for he was not required to answer at all, unless the defendants, Burkam and Dasher, were legally in court, and they were not in court at all, as to Ryan's claim, unless it was filed under the original attachment, for no new summons had been issued and served, as has been shown. When the attachment defendants have been personally served, the garnishee has no interest in the question of jurisdiction; but when they have not been so served, or have not appeared to the action, the person summoned as a garnishee should raise the question of jurisdiction before answering, and need not answer at all unless jurisdiction has been acquired. *Schoppenhast* v. *Bollman*, 21 Ind. 280; *Beard* v. *Beard*, 21 Ind. 321; *Harmon* v. *Birchard*, 8 Blackf. 418; *Richardson* v. *Hickman*, 22 Ind. 244.

It is quite manifest to us that the attorneys in the original action understood, or had a very strong intimation, that Ryan had filed his claim under the original proceedings; for in no

other way can the character and manner of the compromise and attempted dismissal be accounted for.

We do not deem it necessary to decide whether the paper filed with the clerk on the night of the 28th of December, 1867, amounted to a dismissal of the cause; for it is not pretended that the original action had been dismissed, or that any attempt had been made to compromise and dismiss it, prior to the time when Ryan filed his claim thereunder. Conceding that the original action was dismissed the night of the day on which Ryan filed his claim, such dismissal could not affect or destroy his right to hold every advantage and every dollar in money and all property that was held by the original proceedings. Sec. 187, 2 G. & H. 148; *Henderson* v. *Bliss*, 8 Ind. 100; *Shirk* v. *Wilson*, 13 Ind. 129; *Rugg* v. *Johnson*, 13 Ind. 437; *Schmidt* v. *Colley*, 29 Ind. 120.

.  Ryan having filed his claim under the original attachment proceedings before there had been a final adjustment, has the right to hold the American Express Company and James Dalyell, agent thereof, upon the garnishment issued and served under the original attachment proceedings. No new writ of garnishment was required, and the fact that the clerk unnecessarily issued a second writ does not in any manner release or weaken Ryan's rights under the first writ of garnishment. The case of *Schmidt* v. *Colley*, *supra*, is decisive of this point. But if there were no adjudications upon the point, the statute upon this whole subject is too plain and direct in its meaning and wording to permit misconstruction or leave room for dispute. The writ of garnishment is an incident to, and an auxiliary of, the attachment. No writ of garnishment can be sustained unless it is issued in aid of an attachment. proceeding commenced before, at the time, or after, the writ is issued. The affidavit upon which the writ of garnishment is permitted. to issue must state that there is money or property that cannot be reached by virtue of the attachment, and when the writ of garnishment issues in advance of the attachment proper, "the affidavit must show

some one of the causes authorizing the attachment." Sec. 175, 2 G. & H. 144.

This is sufficient to show that no new writ of garnishment was necessary. The writ issued and served under the original attachment held all the money and property belonging to the defendants in the hands of the garnishee at the time of the service of the writ, not only for the original plaintiff, but for all creditors who might, under the statute, file claims under the original attachment at any time before the final adjustment thereof. But this is made certain beyond all cavil by the words of section 186 of the code, which reads as follows:

"Sec. 186. Any creditor of the defendant, upon filing his affidavit and written undertaking, as hereinbefore required of the attaching creditor, may, at any time before the final adjustment of the suit, become a party to the action, file his complaint, and prove his claim or demand against the defendant, and may have any person summoned as garnishee or held to bail, who has not before been summoned or held to bail, and propound interrogatories to the garnishee and enforce answers thereto, in like manner as the creditor who is plaintiff."

The above section makes several points very plain: 1. That Ryan had the right, at any moment of time before the final adjustment of the original suit, to file his claim thereunder. 2. That he became a party to the original suit by filing his complaint, affidavit, and undertaking, in such manner as indicated a purpose to prosecute under the original action. It was said by this court in *Schmidt* v. *Colley, supra,* that "section 186 of the code provides how that may be done, and service of a summons is not one of the things required. At any time, it may not be an hour, before the final adjustment of the original suit, a complaint, affidavit, and undertaking may be filed, and then the creditor who has performed these requirements may become a party and prove his claim. This is all that the statute, in terms, requires; and we perceive no sufficient reason for holding

that a new summons. must issue on behalf of each creditor who chooses to avail himself of the pending cause. We believe that such a practice has never obtained anywhere, during the sixteen years that the code has been in force."

3. That when a writ of garnishment is once issued and served, under the original attachment proceeding, it holds good for all creditors filing under such proceeding, in the time and manner above stated. If such had not been the purpose of the legislature, the following words in the above quoted section, would never have been used, " and may have any person summoned as garnishee, or held to bail, who has not before been summoned or held to bail."

In the case under consideration, the record shows in the most conclusive manner that a writ of garnishment did issue against the express company and its agent, under the original attachment proceedings; that that writ was duly and legally served upon James Dalyell, the agent of the company; that he recognized the binding force of that writ; that when such writ was served, he held, as such agent, twenty-four hundred dollars of Dasher's money, which he continued to hold as garnishee under and by virtue of that writ; that while the original proceedings were still pending and undisposed of, the appellant filed his claim, complied with the statute, and brought his claim under the original attachment; that on the trial, and after a full investigation, the appellant established his claim against Burkam and Dasher, and his attachment was held good as to Dasher, whose property was garnished in the hands of the express company; and that the agent of such company delivered the money so garnished to the attorney of Dasher before any final adjustment of the original suit.

It remains to inquire whether the fact that James Dalyell, the agent of such company, upon being informed by the attorneys in the original attachment proceedings that such suit had been compromised and the case dismissed, paid the money to the attorney of Dasher, releases and discharges such company from liability under the said garnishment. It

is very earnestly insisted by counsel for the express company and Dalyell, that Dalyell acted in perfect good faith, honestly believing that the original action had been compromised and dismissed, and did not know that Ryan had commenced his action.

In our opinion, the liability of the express company does not depend upon the good faith of its agent. The question is, did the agent comply with the law?

There were two ways in which the agent of the express company might have shielded it from all liability. In the first place, the garnishee might have delivered the money or property in his possession to the officer serving the writ, or paid the money into court, and this would have discharged the company from all liability. Secs. 184, 185, 2 G. & H. 147.

It is provided in section 176 of the code, 2 G. & H. 145, that "from the day of the service of the summons, the garnishee shall be accountable to the plaintiff in the action for the amount of money, property or credits in his hands, or due and owing from him to the defendant."

We have seen that the garnishee is not only accountable to the original attachment plaintiff, but to all creditors who may file their claims before the final adjustment of the original suit. It was held by this court, in *Cleneay* v. *The Junction R. R. Co.*, 26 Ind. 375, that "a payment, after the service of the summons of garnishment, to the attachment defendant, or his general assignee for the benefit of creditors, will not discharge the garnishee defendant."

The agent is charged with a knowledge of the law, and was, therefore, bound to know that any other creditor had the right to file his claim under the original attachment proceedings at any time before the final adjustment thereof, and share in a distribution of the money in his hands.

The agent is presumed to have known that the dismissal of the original action, by the first attaching creditor, would not operate as a dismissal of the action or proceedings of any subsequent attaching creditor, or in any manner impair or defeat the rights of such subsequent attaching creditor,

which he had acquired by filing under the original proceedings. Sec. 187 of the code, 2 G. & H. 148.

The agent is presumed to have known that no final judgment could have been rendered against him, until the action against the defendant in attachment was determined. Sec. 180, 2 G. & H. 146; *Henderson* v. *Bliss*, 8 Ind. 100.

The agent is presumed to have known that the claims of other creditors, filed under an attachment suit, are, under our statute, liens from the time the original writ was placed in the hands of the officer. *Shirk* v. *Wilson*, 13 Ind. 129.

The agent of the express company, having failed to deliver the money in his hands to the officer, or to pay it into court, was bound to retain the money in his hands until the final adjustment of the suit; and the dismissal of the action was not such final adjustment, if other creditors filed under the original proceedings. The agent relied upon the representations of others. He was not shown any order dismissing the action, or any certificate of the clerk showing that the action had been dismissed. But the agent would not have been justified in delivering the money upon the most satisfactory evidence of the dismissal of the original action, without ascertaining whether other claims had been filed thereunder. The agent was not content to abide the order of the court, but assumed to act upon his own responsibility; and in such case he was bound to exercise great care and prudence, to prevent injury to others. This he did not do.

Counsel for the express company have pressed upon our consideration the great hardship which would result if the company should be required to pay this money again. We admit the force of the argument, but cannot permit it to influence our judgment. When courts undertake to avoid an apparent hardship, they are very apt to depart from the long and well settled principles of the law, and thereby establish a precedent which would produce greater injury and hardship than the one attempted to be avoided. The duties and liabilities of garnishees are clearly defined by the statute and the repeated adjudications of the courts, and we

possess no power to relieve them from their liability. In the present case, the agent failed to pay the money into court or to abide the order and judgment of the court, but acted upon his own judgment. The company cannot be relieved from liability under such a state of facts.

We are very clearly of the opinion that the court below erred in refusing to permit the appellant to prosecute his claim under the original proceedings in attachment, and in finding for the express company and its agent upon the evidence in the cause; for which errors the judgment as to the American Express Company and James Dalyell, its agent, must be reversed.

The judgment is reversed, with costs; and the cause is remanded, with directions to the court below to grant a new trial as to the American Express Company and James Dalyell, its agent, and for further proceedings in accordance with this opinion.

### ON PETITION FOR A REHEARING.

BUSKIRK, J.—A very earnest and elaborate petition for a rehearing has been filed. The principal reason assigned for a rehearing is, that the court erred in holding that Ryan filed under the attachment proceedings instituted by Burkam against Burkam and Dasher, and that he had the right to prosecute his action under such proceeding. In the original opinion it was stated, that, upon filing the complaint of Ryan, the clerk issued new writs in attachment and garnishment, but that no new summons was issued against the defendants in the original action. It is insisted that the court was mistaken in stating that no summons was issued, and it is claimed that it appears from the record a new summons was issued and served upon such defendants. Such fact may be shown by the files or records in the court below, but from a very careful and repeated examination of the transcript, we have been unable to find any such statement, or any statement from which such fact might be inferred.

It is also insisted that the ruling in this case is in conflict

with the case of *Sturgis* v. *Rogers*, 26 Ind. 1. In that case the question arose whether certain parties had commenced independent actions and proceedings in attachment, or had become parties to the original action and attachment proceedings. The court, in the statement of the facts of the case, say: "On the 19th and 20th of December, the other plaintiffs filed complaints and claims 'under said attachment suit,' as is stated by the clerk in making up the transcript, but it does not appear by the record that they or any of them became or applied to become parties to the original action commenced by Rogers. They filed affidavits and undertakings, alleging in the former the non-residence of Ellis and Sturgis, and their complaints are as usual in independent suits." The court, after stating the rendition of the judgment in the original action, say :

"The other creditors, plaintiffs here, took their separate judgments against Sturgis and Ellis by default at the same term, on the 23d of January, 1856."

The court, on page 9, say : "To determine whether any of the present plaintiffs but Rogers can maintain a suit upon the appeal bond, it is important to enquire whether they became parties to the attachment suit commenced by Rogers. This must be ascertained exclusively by an inspection of the record. It can appear in no other way. Those persons might have become parties to that suit so as to share with Rogers in the judgment against the garnishee (2 G. & H. sec. 186, p. 147), or each of them might have chosen to commence an independent suit. Nothing upon the subject can be legally inferred from the fact that they filed their complaints and took their judgments at the same term at which the suit by Rogers was pending and determined, for that they might lawfully do without becoming parties to his suit. 'Nor are we aided by the statement of the clerk made in the transcript, after the record in the Rogers case, that 'the following cases are filed as claims under said attachment,' followed by transcripts of the records of those other cases. The fact as to who have become parties to a

suit in a court of record cannot rest merely in the memory of the clerk. The record itself must disclose it. The judgment against the garnishee, though in favor of Rogers alone, but containing an order for the payment out of the amount thereof of the several sums 'that are due to the several plaintiffs in the proceedings,' is the only indication in the entire record that Rogers was not the sole party plaintiff in that suit. But this alone is obviously insufficient, for it fails to show who those other parties were. And as the whole transcript is made part of the answer, and it discloses no party plaintiff but Rogers, there is no method of avoiding the conclusion that Rogers was legally the only party plaintiff to the attachment suit against Sturgis and Ellis, and the only party before us, therefore, having an interest in the judgment against the garnishee in that suit."

We have made an extended quotation from the case mainly relied upon by counsel in their brief for a rehearing, for the purpose of showing fully the grounds upon which it was based, and that it is clearly distinguishable from the one under examination. In that case, the only evidence of a filing under the original attachment proceedings was the recital by the clerk, and that portion of the judgment which provided for the payment of the several sums due to the several plaintiffs in the proceedings. The entry made by clerk was a nullity, and could not be considered by the court for any purpose. *Kesler* v. *Myers*, 41 Ind. 543. The judgment failed to show who the other parties were. There was, then, no legal evidence showing that the plaintiffs in that action, other than Rogers, had become parties to the original attachment proceedings. The court say that the question of whether such persons had become parties to the original action must be determined exclusively by the record. This we concede is right. The court, however, in their history of the case say, that it does not appear by the record that they or any of them became or applied to become parties to the original action commenced by Rogers.

Let us apply the principles decided in the above case to

the one in judgment. The real question in dispute is, whether Ryan commenced an independent action or became a party to the original action. In what manner does a creditor become a party to an original attachment proceeding? The solution of the question depends solely upon a construction of our statute; for we are not aided by adjudications in other states, for the plain and obvious reason that no other state has a statute by which creditors can file under, and become parties to, an original attachment proceeding. See the abstract of the laws of the several states, in reference to attachment proceeding in the appendix to Drake on Attachments.

Sec. 186 provides, that "any creditor of the defendant, upon filing his affidavit and written undertaking, as hereinbefore required of the attaching creditor, may, at any time before the final adjustment of the suit, become a party to the action, file his complaint, and prove his claim or demand against the defendant," etc.

It was said in *Schmidt* v. *Colley*, 29 Ind. 120, by the same learned judge that delivered the opinion of the court in *Sturgis* v. *Rogers*, 26 Ind. 1, that "before the final adjustment of the original suit, a complaint, affidavit and undertaking may be filed, and then the creditor who has performed these requirements may become a party and prove his claim. This is all that the statute, in terms, requires," etc.

Considering the two opinions together, the plain and obvious meaning is, that when the record shows that a creditor has filed a complaint, affidavit, and undertaking, he has become a party to the original action, whenever there is any thing in the record which shows that the creditor intended to file under the original proceeding, and not to commence an independent action. In the case in judgment, Ryan, filed his complaint, affidavit, and undertaking. In the caption of the complaint there is a reference to the original action, and in the prayer he asks to be made a party and be permitted to prosecute his claim under said action. The complaint is a part of the record, and, therefore, conforms to the require-

ment laid down in *Sturgis* v. *Rogers, supra.* Besides, it is said in the case last cited, that the whole transcript was before the court, and disclosed no party plaintiff but Rogers, while in the present case there is in the record a bill of exceptions, which contains an entire transcript of the attachment proceedings, and the original and subsequent proceedings are so dovetailed together that we could not separate and disconnect them, without mutilating the record. It is true, that counsel in their petition say that the bill of exceptions is not correct, and was not seen by them before it was signed. It is known to the learned counsel who make the suggestion, that a bill of exceptions, when properly signed and in the record, imports absolute verity and is conclusively binding upon this court.

Finally, it is urged that the court below had no jurisdiction of the action or the parties, for the reason that the justice of the peace, before whom the action was commenced, had no power to certify the case to the circuit court, for the reason that the act of March 4th, 1859 (2 G. & H. 148), does not authorize a plaintiff who has commenced an attachment proceeding before a justice, upon a claim within his jurisdiction, to afterward file a claim for a sum beyond the jurisdiction of the justice, but that such statute was intended to authorize some creditor, other than the plaintiff, to file his claim thereunder.

We regret that we are deprived of the power of deciding the interesting' question presented. There was no question raised in the court below, or in this court, involving the jurisdiction. The original plaintiff commenced his action on a claim within the jurisdiction of the justice. Subsequently he filed a claim beyond the jurisdiction of the justice, and the cause was certified to the circuit court, in which court, the defendants and garnishee appeared and raised no objection to the jurisdiction of the court over the subject-matter of the action or of the parties.

Subsequently, the case was compromised, and the money secured by the garnishment was divided between the parties.

Afterward, the defendants and garnishee appeared to the action of Ryan, without raising any question affecting the jurisdiction of the court. The case was appealed to this court, but there is no assignment of error calling in question the jurisdiction of the court below. Under the settled rules of practice of this, and we believe all other appellate courts, the question cannot be raised for the first time upon a petition for a rehearing.

We are entirely satisfied with the original opinion and judgment pronounced in this case. The petition is overruled.

*J. E. McDonold, J. M. Butler,* and *E. M. McDonald,* for appellant.

*C. H. Burchenal, J. P. Siddall,* and *G. A. Johnson,* for appellees.