persons, who are partners in trade, shall be adjudged bankrupt" either on their own petition, or on the petition of one of them, or on the petition of any creditor of the partners. Then the proceeds of the joint stock go to the co-partnership creditors, and the proceeds of the separate estate of each partner go to pay his separate creditors. But suppose no estate of the firm should come to the hands of the assignee in a given case, and there were individual assets? Does it follow that the company creditors are to receive nothing except as there is a surplus after paying the separate creditors? It is not necessary to decide that question now, but I notice Circuit Judge Dillon intimates, in Re Downing [Case No. 4,044], that the firm creditors in such a case would be entitled to share the individual estate of the partners with the separate creditors, for he says that section thirty-six comes into operation only when there are firm assets; by which I understand that learned judge to imply that congress did not intend to change the rule in equity, viz.: where there is no joint estate and no solvent partner, all the creditors, joint and separate, shall share pro rata in the estate of the bankrupt partners. This construction commends itself to my judgment, as any other would work such manifest injustice to the joint creditors.

The sale and transfer by Edwin Rice to George Rice, of all his interest in the partnership property, was valid; from that time there has been no co-partnership estate, and therefore the firm creditors had a legal and equitable right to look to the separate estate of the individual partners for payment, as much so as had the individual creditors. George Rice was, at law, liable to respond to the co-partnership creditors to the full amount of their claims, (as was also Edwin Rice) and it would be difficult to give any good reason why, when George Rice was brought into bankruptcy, his estate should not respond to the claims of the co-partnership creditors, as well as to those of individual creditors. The bankrupt law takes from the co-partnership creditors no rights which they had at law to have their pay from the estate of the individuals of the firm, when there is no firm property. It would afford no defense at law against the firm creditors seizing George Rice's property that they have a remedy against Edwin, nor could individual creditors of George defeat the co-partnership creditors in equity, without showing that there was another fund to which they could resort for payment of their claims, as that Edwin was solvent. The court will not presume that Edwin Rice is solvent, and has property that can be reached by the joint creditors. His pecuniary responsibility is a matter of affirmative proof by the individual creditors who object to the company creditors sharing in dividend from the bankrupt's estate. If there was evidence to establish Edwin Rice's responsibility, it would be equitable to turn the co-partnership creditors over to their remedy against Edwin Rice, if there were no other feature in the case indicating that such course would be a violation of their rights.

The other feature of this case is, that George Rice agreed in writing, at the time of purchasing Edwin's interest in the company property, that he would pay all debts of the firm. This promise is binding on the bankrupt, not only as between him and Edwin Rice, but the co-partnership creditors could have maintained suit against George Rice thereon, as it was for their benefit. The law seems to be well settled in this country that, "if one person makes a promise to another for the benefit of a third, the latter may maintain an action upon it, though the consideration did not move from him." 2 Greenl. Ev. § 100, and note; 1 Pars. Cont. (5th Ed.) 467, 468, and cases cited. Under that agreement, the company creditors have a right to look to the bankrupt's estate, as at law they could enforce it against him, and equity will not interpose to defeat that promise, made for their benefit. They are creditors of George Rice as much as if the promise was made directly to them; as much as if they had both company notes and the bankrupt's individual notes, and equity will not defeat, but enforce their rights, under such circumstances.

Both questions are answered in affirmative. The clerk will certify this opinion to Register Burns.

The following cases are referred to as bearing on the questions discussed: In re Byrne [Case No. 2,270]; In re Frear [Id. 5,074]; In re Jewett [Id. 7,304]; In re Montgomery [Id. 9,731]; In re Downing [Id. 4,044]; In re Goedde & Co. [Id. 5,500]; In re Knight [Id. 7,880]; [Tucker v. Oxley] 5 Cranch [9 U. S.] 34; 21 Conn. 41; 5 Serg. & R. 77; 20 N. Y. 268.

---

## Case No. 11,750a.

### RICE v. BALDWIN.

[11 Reporter, 627;[1] 27 Int. Rev. Rec. 130.]

Circuit Court, D. Indiana. Feb., 1881.

ATTACHMENT—PROPERTY DELIVERED BEFORE ACTION WAS DISMISSED—OTHER ATTACHING CREDITORS.

Where property was attached by the sheriff, and before the action was dismissed the sheriff, on the order of the plaintiff in attachment proceedings, delivered the property to the defendant therein, *held*, that the sheriff was liable to account for the value of the property to any creditor who commenced proceedings in attachment at any time after the property was so delivered, and before the action was actually dismissed.

In an attachment suit brought by Wilson and Wolf, the writ was levied on certain property by defendant, as sheriff. Subsequently the plaintiff Rice filed his petition, affidavit, and bond in the same suit, as a

[1] [Reprinted from 11 Reporter, 627, by permission.]

creditor, and became entitled to the benefit of the same. The complaint alleges that the sheriff, without the orders of the court, allowed the attached property to be taken from his custody, and disposed of. The defendant avers that, before the plaintiffs filed their complaint in the attachment suit, Wilson and Wolf and the attachment defendants agreed that one Mitchell, agent of the latter, should take possession of the attached property, sell the same, and apply the proceeds to the payment of Wilson and Wolf's debt; all of which was done before plaintiff filed his complaint; and that the suit was not then dismissed by reason of mere neglect. Demurrer to answer.

GRESHAM, District Judge. [2] [The complaint avers that, on the 22d day of September, 1876, Jason Wilson and Adam Wolf began an action in attachment, in the Grant circuit court, against Isaac Crosslet, John B. Graves, Samuel Pugh, and Daniel Mitchell; that on the same day the writ of attachment which came into the hands of Lancaster D. Baldwin, as sheriff, was levied by him on a lot of lumber, shingles and lath, of the value of $5,000, the property of the attachment defendants; that on the 1st day of February, 1877, while the suit and attachment proceedings were still pending and undisposed of, the relator, Charles Rice, filed his complaint, affidavit and bond in attachment under the proceeding of Wilson and Wolf, and became entitled to the benefit of the same; that on a subsequent day Wilson and Wolf appeared in open court and dismissed their action and attachment, and thereafter, to wit, on the 26th day of September, 1877, Rice recovered judgment against the attachment defendants, on his cause of action, for $3,619.94, and at the same time obtained an order for the sale of the attached property, and an application of the proceeds to the payment of his debt; that, without the authority or order of the court, Baldwin allowed the attached property to be taken from his custody, and to be wasted, sold and otherwise disposed of, and failed and refused, upon proper demand, to deliver the same to his successor in office, to be sold under the order of the court; and that Baldwin and the sureties on his bond are liable to the relator for the value of the attached property.

[In the ninth paragraph of their answer, after admitting the commencement of the action, and proceeding in attachment by Wilson and Wolf, and the levy by Baldwin on the lumber, shingles and laths, under the writ of attachment, as stated in the complaint, the defendants aver that before the relator filed his complaint, affidavit and bond, and attempted to become a party to the original proceeding, Wilson and Wolf and the attachment defendants agreed that one Mitchell, the agent of the attachment defendants, should take possession of the attached property, sell the same, and apply the proceeds to the payment of Wilson and Wolf's debt; that, by direction of Wilson and Wolf and the attachment defendants, Baldwin, the sheriff, permitted Mitchell to take possession of the attached property, sell the same, and, with the proceeds, on the 11th day of January, 1877, pay Wilson and Wolf's debt in full; that, on the last-named day, it was agreed by the parties, no other creditor having then become a party to the attachment proceedings, that the suit should be at once dismissed, but, by neglect, the same was not done until after the first day of February, 1877, when the relator filed his complaint, affidavit and bond, aforesaid, and the attached property was thus sold, the debt of Wilson and Wolf paid, and the agreement for the dismissal of the suit and the attachment proceeding entered into in good faith, and without any knowledge that the relator or any other creditor intended to file thereunder. The tenth paragraph of the answer is in substance the same as the ninth. There is a demurrer to the ninth and tenth paragraphs of the answer.

[Section 165 of the Indiana Code makes a writ of attachment a lien upon the property of the attachment defendant from the time it is delivered to the sheriff. Section 186 authorizes any creditor of the defendant, upon filing the proper affidavit and bond, to become a party to the action and attachment proceeding at any time before the final adjustment of the suit. Section 187 declares that a dismissal of the action on proceeding in attachment shall not operate as a dismissal of the action or proceeding of any subsequent attaching creditor. Section 192 declares that the money realized from the attached property, after paying all costs and expenses, shall be paid to the several creditors in proportion to the amount of their several claims.] [2]

In Shirk v. Wilson, 13 Ind. 129, it was held that the claims of other creditors filed under an attachment suit are liens from the time the original writ was placed in the hands of the sheriff. The records in the clerk's office showed that Wilson and Wolf's suit in attachment was pending, and that the sheriff had levied on property of the attachment defendants when Rice filed his complaint, affidavit, and bond. The plaintiffs neglected to dismiss their suit, as they had agreed to do, and the defendants neglected to have the suit dismissed, as they might have done. The dismissal by Wilson and Wolf, after Rice had become a party to the proceeding, had no effect on any rights which Rice had acquired. While Baldwin was not a party to the attachment suit, he was interested in having that suit dismissed before other creditors filed under it. But he neglected to inform the court of the payment of Wilson and

Wolf's debt, the agreement to dismiss, and the disposition that had been made of the attached property, and Rice took the necessary steps to become an underfiling creditor, and proceeded in the regular way to judgment on his claim. The court also found that the property which the sheriff had seized was subject to the lien of Rice's attachment, and ordered that it be sold to pay his debt. Baldwin and his sureties are now sued because Baldwin failed to deliver the attached property to his successor in office for execution, and the defense is an indirect attack on the order of the court. The court could, and perhaps would, have permitted Baldwin to set up the agreement between the original attachment plaintiffs and defendants, for the dismissal of the suit, in opposition to Rice's motion for an order to sell the attached property and have the proceeds applied to the payment of his debt. Adams v. Balch, 5 Me. 188; Drake, Attachm. § 304. But finding that the original suit in attachment was pending on the docket, that there had been no "final adjustment" of it by dismissal or otherwise, was Rice bound to go farther and inquire whether there was any private or outside agreement for its dismissal? I think not. What effect it would have had if, before taking the necessary steps to become an underfiling creditor, Rice had known of the payment of Wilson and Wolf's debt, and of the agreement to dismiss the suit, is not a question now before the court. The attached property was in the custody of the court for the benefit of Wilson and Wolf and all other creditors who saw fit to become parties to the proceeding. While the case remained on the docket, unless the defendant substituted a bond for the attached property, Baldwin was bound to hold it, not under the orders of the plaintiffs as in the case of an ordinary execution, but under the orders of the court, and have it forthcoming when demanded for execution. His failure to do this was a neglect of his official duty, whereby Rice acquired a right of action against him and the sureties on his official bond. The surrender of the attached property to Mitchell by direction of Wilson and Wolf and the defendants was of course a protection to Baldwin against them. Rice is entitled to such damages as will indemnify him for Baldwin's neglect of official duty. Whether Rice is entitled to recover nominal damages only, or the amount of his debt, if the value of the attached property was enough to pay the debt, or an amount equal to what his pro rata share would have been had there been no agreement to dismiss, and the property had been held for execution, need not now be decided. It is sufficient, in overruling the demurrer, to say that Rice had a right of action. Demurrer overruled.

[Demurrer to 9th and 10th paragraphs of answer sustained.] [3]

[3] [From 27 Int. Rev. Rec. 130.]

## Case No. 11,751.

### RICE v. BARRY.

[2 Cranch, C. C. 447.] [1]

Circuit Court, District of Columbia.   April Term, 1824.

STATUTE OF FRAUDS—PROMISE TO PAY FIRM DEBT —CONSIDERATION—PLEADING AT LAW—COUNT.

1. A separate and express promise by one co-partner to pay a debt of the firm, is not a promise to pay the debt of another, within the statute of frauds, although judgment for the same debt had been recovered against the other partner; and forbearance to arrest this other partner, at the request of the former, is a good consideration to support his promise.

2. A count upon a promise to pay in consideration that the plaintiff, who had arrested the other partner upon a ca. sa., would, at the present defendant's request, forbear to prosecute that other partner upon the ca. sa., and would not trouble him, but let him go out of custody of the marshal, and in further consideration that the debt was a partnership debt for which the present defendant was equally liable with the other partner, and which he had promised that other partner to pay, is not double or multifarious, and is good even upon special demurrer.

Assumpsit [by Thomas Rice against Robert Barry].

1. The first count stated that the plaintiff, at June term, 1820, had recovered judgment against one James D. Barry, in this court, for $648.86, with interest from a certain day, and $15.34 costs, who was arrested upon a ca. sa. issued thereupon, and in custody of the marshal; in consideration whereof, and that the plaintiff, at the request of the defendant, would forbear to prosecute the said J. D. B. on that ca. sa. and would not trouble him, and would let him go on the said execution, and would discharge him from the custody of the marshal, thereupon the defendant promised to pay in the autumn of the year 1820. That the plaintiff, confiding in that promise, did forbear, &c., and did not trouble the defendant, and did let him go, &c., whereof the defendant had notice, and thereby became liable to pay to the plaintiff the said sum, according to the tenor and effect of the promise, and being so liable, promised to pay, &c.

2. The second count contained the same averments, with this, also, "that the said sum of $648.86, with interest, &c., and costs, for which the said judgment was rendered against the said James D. Barry, was a partnership debt, for which the said defendant was equally bound with the said James D. Barry."

3. The third count stated the judgment against J. D. B., and his arrest on the ca. sa., and that, "in consideration of the premises, and that the said sum of $648.86, with interest, &c., and costs, for which the said judgment was so rendered against the said James D. Barry, was a partnership debt, for which the said defendant was liable, and

[1] [Reported by Hon. William Cranch, Chief Judge.]