SHREVE v. WHITTLESEY, Adm'r. of WHITTLESEY.

MAY TERM.
1842.

Shreve
v.
Whittlesey,
adm'r. of
Whittlesey.

1. The term "*beyond sea*," in the first section of the statute of "Limitation," of 1825, means "out of the State." (Napton, Judge, dissenting.)

2. Where an immaterial issue, tendered by the plaintiff, was found for the defendant, and it appeared from the record, that the awarding a repleader was not necessary to effect substantial justice between the parties, the court properly gave judgment for the plaintiff, *non obstante veredicto*.

Error to St. Louis Court of Common Pleas.

BLAIR & GANTT for Appellants.

ALLEN for Appellee.

*Opinion of the Court delivered by Tompkins, Judge.*

Whittlesey brought this action, on a promissory note, against Shreve. Shreve pleaded the statute of limitations. To this plea the plaintiff replied, first, That at the time when the said cause of action accrued, the plaintiff was beyond sea, to wit, at Louisville, in the State of Kentucky, and that he brought his action within ten years after his return to this State. To this replication the defendant demurred, and the court gave judgment on the demurrer for the plaintiff.

The plaintiff filed a second replication, by leave of the court, to this plea, tendering an immaterial issue, and this issue being found for the defendant, judgment was entered up for the plaintiff *non obstante veredicto*.

It is contended that the court erred, first, in giving judgment on the demurrer for the plaintiff; and second, in entering up judgment for the plaintiff, on the issue found for the defendant.

The statute of limitations of 1825, in force when this note here sued on was made, has this proviso to the first section : "That if any person entitled to any of the before mentioned actions, shall, at the time the cause of the action accrued, be within the age of twenty-one years, &c., or beyond sea, or absent from the United States, such person may bring such action within such times as are before limit-

MAY TERM,
1842.

Shreve
v.
Whittlesey,
adm'r. of
Whittlesey.

ed, after the respective disabilities are removed." It is contended that the words of the statute "beyond sea," are to be construed literally, and consequently that a residence in Kentucky is no bar to that statute of limitations.

Angel, in his work on limitations, says, that the meaning of the expression "beyond seas," in the statutes of limitations in these States, seems to be, that "beyond seas," and out of the State, are analogous expressions, and must have the same construction' He cites several authorities. See his work, p. 219. The counsel of the defendant admits the current of authorities to be strongest in favor of that construction, when the words are unqualified, and contends that the time is qualified in our statute by words used in the proviso of the third section of the same act, viz: that the persons enumerated in that section may, notwithstanding "the twenty years be expired, sue, &c. provided, that such person or persons shall within twenty years next after attaining full age, &c., or coming into these United States, sue for the same." For the purposes of persons, such as are provided for in the second and third sections of the act, the statute begins to run against them after their return to the United States. But such is not the proviso in the first section, which provides for a different class of suitors.

The term "be-
yond sea," in
the first sec. of
the statute of
"Limitation,"
of 1825, means
"out of the
State."

That act has now been repealed about eight years, and but one case decided under it has been cited in the argument of this cause ; that is the case of King v. Lane, decided in this court at the September term, 1841, p. 241 of the 7th vol. Mo. R. This cause being one of some importance, was twice argued, and at two several terms, and the counsel on both sides acquiesced in construing the term "beyond sea" to signify "out of the State." For myself, individually, I never entertained a doubt that such was the meaning of the legislature ; but however I might be disposed to give the law a different construction, if it were now in force, I do not feel disposed now to disturb its repose by giving it a different construction from that which has heretofore been acquiesced in.

Where an im-
material issue,
tendered by

As to the second point, that the court erred in entering up for the plaintiff a judgment *non obstante, &c.* Mr. Chitty

says, "When an issue is immaterial, the court will order a repleader, if it will be the means of effecting substantial justice between the parties, and not otherwise; and where in debt on bond, the defendant pleaded performance generally, and the plaintiff replied, denying the performance, and concluding to the country, stated breaches by way of suggestion, instead of replying to them. After verdict for the plaintiff, a repleader was awarded, such issue being insufficient.

In this cause, the plaintiff tendered in the first replication a good issue, and the defendant by his demurrer admitted the truth of the facts; and joined issue on the bad replication. The court, by ordering a repleader in the case, would not advance the cause of justice, in as much as the plaintiff could not plead that matter well. He has judgments on several other pleas, and it would not advance the cause of justice to send him back to the court of original jurisdiction, and thereby enable the defendant longer to deprive the plaintiff of the benefit of his judgment. The judgment of the court of common pleas is affirmed.

MAY TERM,
1842.

Shreve
v.
Whittlesey,
adm'r. of
Whittlesey.

the plaintiff, was found for the defendant, and it appeared from the record that the awarding a repleader was not necessary to effect substantial justice between the parties, the court properly gave judgment for the plain-tiff *non obstante veredicto.*

### Opinion of Napton, Judge.

I am of opinion that the words "beyond sea," in the act of February 21, 1825, mean what the words literally imply. The construction given to those words in England, or in other States of this Union, cannot have sufficient weight to counterbalance the construction which the legislature of this State has given to these words in the very act itself. The third section enumerates the same disabilities as the first, and instead of speaking of the removal of these disabilities in general terms, such as were used in the first section, it proceeds to describe particularly in what way each disability could be removed. The counterpart to the words "beyond seas," is the phrase "by *coming into the United States.*" The legislature have not varied the disabilities described in the third section, from those enumerated in the first; nor is there any reason why they should be different in real actions from what they are in personal, except in point of time. The words " beyond seas," then in the third section, the legislature have

themselves interpreted to mean "without the United States," and I see no way in which a similar construction of the same words in the first section can be avoided.