MARVIN, Adm'r of BATES vs. BATES.

The term "*beyond sea*" in the first section of the statute of "limitation" of 1825, means "*without the United States.*" (The cases of Shreve vs. Whittlesey adm'r of Whittlesey, 7 Mo. Repts., page 473, and Bedford vs. Bradford, 8 Mo. Repts , page 233, are overruled by this decision.)

| 13 | 217 |
|----|-----|
| 58a | 639 |
| 13 | 217 |
| 158 | 58 |

ERROR TO HENRY CIRCUIT COURT.

STATEMENT OF THE CASE.

This was an act of assumpsit brought in the Henry circuit court in April, 1848, by Marvin as administrator of Bates against A. W. Bates upon three several promissory notes bearing date October 10th, 1828, payable, one on the first of January, 1831, the second first of January, 1833, and the third, first of January, 1834; for one hundred dollars each. Said notes were executed by the defendant, A. W. Bates to the plaintiff's intestate.

The defendant, at the return term of the writ, filed his plea of the general issue, under and conformable to the statute of 1847.

At the trial term by consent of parties the cause was submitted to the court for trial without a jury. The plaintiff read to the court the three several notes sued upon as evidence of his debt, and it was agreed by the parties and so submitted to the court, that at the time of the execution of the notes read in evidence, the defendant and plaintiff's intestate, the payee of the note both resided in the State of Kentucky. That the defendant removed to the State of Missouri in the fall of the year 1828 or 1829, and has continued to reside in this State ever since. That the intestate also resided in the State of Kentucky at the time the notes were executed, also at the time the cause of action accrued upon each note and continued to reside in the State of Kentucky up to the time of his death ; and it was also further agreed that the said intestate, Dan'l. Bates, never had been in this State from the time the action accrued; and

28

it was also admitted by defendant that the plaintiff in this suit was the administrator of Daniel Bates deceased.

The defendant introduced one B F. Wallace as a witness, who testified that in the year 1835, he was at the house of the plaintiff's intestate in Kentucky, in his life and that Dan iel Bates then said to him that the defendant owed him four hundred dollars, and that if the defendant would pay him one half, he would forgive the balance. That he did not know that he would push the defendant on the notes, yet, after his death, the notes might fall into the hands of his administrator, and that defendant might be troubled. Witness further stated that defendant started to Kentucky with his family in 1839. This was all the testimony in the cause.

The plaintiff thereupon asked the court to declare the law to be in this case: "That if the defendant executed said note in the State of Kentucky, and that the plaintiff's intestate resided in Kentucky at the times said notes fell due, and that the said defendant removed to this State before said notes became due, and has continued to reside in this State ever since, and the plaintiff's intestate, at the time the cause of action accrued on said notes was in and resided in the State of Kentucky and continued to reside in said State of Kentucky up to the time of his death, and n ever came to this State, and that said intestate died some three or four years since; that then, these facts are sufficient to take the case out of the statute of limitations, and that defendant cannot set up said statute as a defence or bar to this action." But the cour t refused to give this instruction, or so to declare the law to be, to which opinion the plaintiff excepted.

Thereupon the defendant asked the following instruction. "That if the notes sued upon have been due for ten years or more before the commencement of this suit, and the defendant has been during all of that time in the State of Missouri, and the plaintiff and intestate all the time knew of his residence, then the defendant is not liable in this action and is entitled to a verdict:" which instruction was given by the court and the plaintiff excepted.

The court thereupon found a verdict for the defendant. The plaintiff then filed his motion to set aside the verdict and grant him a new trial; which several motions being overruled by the court, the plaintiff excepted thereto and has brought the case to this court by writ of error.

## WALLACE, STUART and MILLER, for plaintiff in error.

The court erred in refusing the instruction asked by the plaintiff as well as in giving that asked by the defendant.

The evidence offered by the plaintiff shows an indebtedness to his intestate on the part of the defendant by three several promissory notes, due and payable in 1831, in 1833 and in 1834. That the debt was contracted in Kentucky, and that before the debt became due upon either note, the defendant removed to Missouri, the plaintiff's intestate continuing in Kentucky. The defendant relied upon the statute of limitations, of this State, barring actions of debt or assumpsit upon promissory notes after the lapse of time specified in the statute. The plaintiff contended before the circuit court, and so asked the court to declare the law, that if the defendant were all the time a resident of Missouri, and the plaintiff a resident of Kentucky, that then the plaintiff's case was brought within the provisions, and exception of the act in favor of persons beyond sea.

The instructions asked by the plaintiff and defendant, being up again for review, the proper construction of the terms "beyond sea," although the instruction asked and given for defendant go to a greater length.

The question now presented for the consideration of this court has been twice decided by this court. First, in the case of Shreve, Adm'r. of Whittlesey, vs. Whittlesey, in the 8th vol. Mo. Rep. page 473; and again in the case of Bedford vs. Bradford, contained in the 8th vol. Mo. Rep, page 233; in which latter case the supreme court adhere to the former decision, that the term beyond sea, in the first section of the statute of limitations of 1825, means out of the State. The counsel for plaintiff in error deem these cases as sufficient to determine the ques-

tion. But should this court review those decisions, we would suggest the decisions of other courts as high authority to sustain the cases referred to. Angel, in his work on limitations, sustains the decisions of this court. See Angel on limitations, page 219.

Upon the statute of limitations of the State of Ohio, containing an exception in favor of persons "beyond sea," at the time the action accrues, the supreme court of that State have decided, that those persons without the jurisdiction of the State were "beyond sea," within the meaning of the act. See the case of C. Richardson's Adm'r. vs. Richardson's Adm'r. 6 vol. of Ohio Reports, p. 60; and in that case the court says the terms "beyond sea," are borrowed from the act 21 James I., which, in England, have been judged to have a meaning synonymous with beyond or out of the realm. They further say, like expressions have been held by the supreme court of the United States to be equivalent to *"without the limits of the State."* See 3 Cranch R. 174; 3 Wheat. R. 545. The Ohio court says similar decisions have been made in other States. See 2 McCord, 331; 3 Mass. 271; 1 Pick. 263; see also 7 vol. Ohio Rep. page 525.

The counsel for plaintiff in error deem it unnecessary to add other authorities to those cited as to the proper construction and meaning of the term "beyond sea."

The only remaining question which they will consider is, what statute governs this case. The notes were executed prior to 1830, and the right of action accrued to the plaintiff's intestate upon the notes as they severally fell due in 1831, in 1833 and in 1834, so that, at the time the notes were given and the cause of action accrued, the statute of 1825 was in force. By this statute the exception is made in favor of persons "beyond sea." This suit was brought in 1848, and by the statute of limitations, (Rev. Code 1845) it is provided in the 16th section of the 3rd article of the statute of limitations as follows: "The provisions of this act shall not apply to any actions commenced, nor to any cases where the right of action or of entry shall have accrued before the 1st day of December 1835, but the same shall remain subject to the law then in force." And by the statute of 1835, then in force, that is, on the 1st December of that year, there is this provision in the 11th section of the 3d article of the limitation law of 1835:

"The provisions of this act shall not apply to any actions commenced nor to any cases where the right of action or of entry shall have accrued before the time when this act takes effect, but the same shall remain subject to the laws now in force."

By these provisions, the reservation in the act of 1825, in favor of persons "beyond sea," is preserved to the plaintiff in error, if to be beyond the jurisdiction of the State, is to be "beyond sea." This court has already decided a similar question as to the operation of the statute of 1825, upon the rights of a party under that statute, sueing in the year 1840, when the statute of 1835 was in force. See 7 vol. Mo. Rep. page 241, King vs. Lane.

The counsel for the plaintiff in error, for the reason above set forth, hold the verdict and judgment of the circuit court to be erroneous, and it should be reversed.

STRINGFELLOW for defendant in error.

The expression "beyond sea," as used in the statute of 1825, must be held qualified by other expressions in the same act. The supposition that those words were borrowed from the English statutes, and are held to convey the meaning there attached to them, may hold where there are no other words to explain them. But when they are accompanied with the expression, "beyond the limits of the United States," it is manifestly more reasonable to hold, that they too, should, in analogy to the English meaning, "beyond the realm," be construed to mean beyond the United States. But when we find that the condition upon which the "absence" is removed and the statute again commences running is the "return into the United States," it cannot be doubted that those words should mean out of the United States. Such has been the construction given in Massachusetts to the term "beyond the seas, out of the United States." In those States in which the terms "beyond seas" are held to mean out of

the State, they are either insolated or accompanied with expressions such as "out of the State; "return into the State," showing that it was intentended to make them mean out of the State. 20 Pick. 304; Opinion of Judge Napton in Shreve vs. Whittlesey, 7 Mo. R. 475.

RYLAND, Judge, delivered the opinion of the court.

The single question for our adjudication arises upon the construction of the term "beyond seas" in the statute of limitations passed by our legislature in 1825; as that statute must govern this case.

This question has heretofore come before this court.

In the case of Shreve vs. Whittlesey, adm'r. &c., reported in 7 Missouri Reports page 475, the majority of the judges then constituting this court, decided, that the term "beyond seas" meant in that statute "out of this State."

Judge Napton dissented from this opinion. Although I have great respect for the opinions of my predecessors, I nevertheless have never entertained a doubt of the correctness of the views of Judge Napton in his dissenting opinion in the above case; and I am constrained to adopt them as the proper construction of the above phrase, in that statute. The following is the opinion of the dissenting judge, in the above case:

"I am of opinion that the words "beyond seas," in the act of February 21, 1825, mean what the words literally implies. The construction given to those words in England, or in other States of this Union, cannot have sufficient weight, to counterbalance the construction which the Legislature of this State has given to those words in the very act itself. The third section enumerates the same disabilities as the first, and instead of speaking of the removal of these disabilities in general terms, such as were used in the first section, it proceeds to describe particularly in what way each disability could be removed. The counterpart, to the words "beyond seas" is the phrase *"by coming into the United States."* The Legislature have not varied the disabilities described in the third section, from those enumerated in the first; nor is there any reason why they should be different in real actions from what they are in personal, except in point of time. The words "beyond seas" then in the third section, the Legislature have themselves interpreted to mean "without the United States," and I see no way in which a similar construction of the same words in the first section can be avoided." I fully concur in this construction.

The instructions then given below in this case, were based upon this construction of the above act; and are in my opinion correct. I am then for affirming this judgment and Judge Birch concurring herein, the same is affirmed.