CHOUTEAU et al., Appellants, v. GIBSON.

1. **Ejectment**: PLEADING. Defendant in ejectment may set up in his answer any and all equitable defenses he may have.

2. **Res Judicata.** Where the defendant pleaded *res judicata*, and the plaintiff, in order to avoid the effect of the plea, insisted that the facts relied upon by him for recovery were not sufficiently pleaded, and, therefore, were not admissible in defense of the former suit, but it appeared that that question was raised in that suit and was decided in favor of the admission of the evidence and it was admitted; *Held*, that the plaintiff could not raise it again.

3. ———. The doctrine of *res judicata* applies as well to judgments of courts of last resort as to those of *nisi prius* courts. If the same subject matter comes in question in a second action before a court of last resort, it is bound by its own former decision.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Glover & Shepley* and *T. T. Gantt* for appellants.

*Chas. Gibson* and *Noble & Orrick* for respondent.

NORTON, J.—This cause is here on the appeal of plaintiffs from a judgment of the St. Louis court of appeals affirming the judgment of the circuit court of St. Louis

county in dismissing plaintiffs' petition and rendering judgment for defendant. The reason for this action on the part of the St. Louis court of appeals, is given in the opinion rendered by said court in the case of *Gibson v. Chouteau et al.*, reported in 7 Mo. App. 1. The reason therein given is that the same matter sought to be litigated by plaintiffs in their bill, had been litigated in a former suit brought by *Gibson v. Pierre Chouteau et al.*, and reported in 39 Mo. 536; and that all the questions involved in the present suit had been determined in that suit so as to be *res judicata* between Gibson and Chouteau and all in privity of estate with Chouteau, and that, therefore, plaintiffs were estopped from prosecuting this suit.

The object of the present suit is to divest Gibson of the legal title to sixty-four acres of land in the petition described, upon the ground that at the time Gibson acquired the legal title thereto, the equitable title was in plaintiffs, and that he had knowledge of that fact, and, therefore, took the legal title subject to their equity. Plaintiffs set up in their petition that the sixty-four acres of land in controversy, was a part of 640 acres located by Christian Wilt, in virtue of a certificate of location dated November 30th, 1813, which was issued to James Y. O'Carroll, or his legal representatives, in lieu of 640 acres of land in New Madrid county, which had been confirmed to said O'Carroll, and which had been injured by earthquakes.

The bill sets forth with great particularity the chain of title on which plaintiffs base their equitable claim and may be summarized as follows : 1st. New Madrid certificate No. 150, issued to James Y. O'Carroll, or his legal representatives, authorizing him or them to locate 640 acres of land. 2nd. Deed from said O'Carroll, dated 29th day of November, 1805, acknowledged the same day, and recorded on the 18th day of March, 1809, conveying to George Ruddle 640 acres of land in New Madrid county, in lieu of which said certificate No. 150 was issued. 3rd. Deed of George Ruddle to James Tanner and A. P. Gilles-

pie, dated 7th day of March, 1816, conveying to them, their heirs and assigns, an undivided interest in 550 acres of said tract. 4th. Deed from A. P. Gillespie to James Tanner of all his right, title and interest in and to said O'Carroll tract, acknowledged and recorded on the 18th day of October, 1816. 5th. Deed from said George Ruddle to A. P. Gillespie conveying an undivided interest of 200 arpents of the said O'Carroll tract, executed on the 26th day of May, 1818, and recorded the following June. 6th. Deed from A. P. Gillespie conveying to James Tanner the said 200 arpents in said O'Carroll claim. 7th. Deed from James Tanner in 1819, conveying to Christian Wilt the said 640 acres, it being the O'Carroll tract, and authorizing said Wilt to locate the said certificate 150 issued to said O'Carroll, or his legal representatives. 8th. The location of said certificate and a survey made thereof by Joseph C. Brown, deputy surveyor of the United States, in April, 1818, which survey was not returned to the recorder of land titles till the 10th day of August, 1841. 9th. Deed of trust dated 26th day of October, 1822, made by Joseph Hertzog, conveying to Robert Wash said 640 acres of land located by said Wilt, in trust to pay a debt which said Hertzog owed to one Devotion. 10th. Deed from said Wash, as trustee, dated 27th day of November, 1824, conveying to Pierre Chouteau, father of the plaintiff, sixty-four acres, part and parcel of said tract of 640 acres located by said Wilt. 11th. Sheriff's deed acknowledged May 27th, 1825, and recorded in St. Louis county June 27th, 1825, conveying to Henry Clay all the interest of Joseph Hertzog in said 640 acres located by said certificate No. 150. This sale was made to satisfy an execution which issued upon a judgment obtained by said Clay as executor of William Morrison. 12th. Deed from Henry Clay, acknowledged the 11th day of October, 1839, conveying the said 640 acres of land to Anne McRee, James F. McRee and Samuel McRee. 13th. Deed from Anne McRee, James F. McRee and May, his wife, conveying to Samuel McRee

their interest in said land. 14th. Deed from Samuel Mc-
Ree and wife, acknowledged October 31st, 1839, and re-
corded November 8th, 1839, whereby he bargained, sold,
released and quit-claimed to Pierre Chouteau sixty-four
acres, part of the tract located under the New Madrid cer-
tificate issued to James Y. O'Carroll, or his legal represen-
tatives. 15th. Deed from Charles S. Hempstead, as guardian
of George W. Wilt, dated 10th day of September, 1821,
(the said Christian Wilt having died previous to that time
leaving the said George as his only heir), conveying to
Joseph Hertzog the 640 acres of land located by said cer-
tificate No. 150. This deed was made in pursuance of a
decree rendered by the St. Louis county circuit court in a
suit instituted by said Hertzog in which he set up that the
right acquired by Christian Wilt to the said 640 acres of
land was acquired with partnership funds, and prayed that
said Hempstead should be directed to convey to him, as
surviving partner of Christian Wilt, the said land. 16th.
Decree of the St. Louis circuit court in a chancery suit in-
stituted by Henry Clay against the heirs of Christian Wilt
and Joseph Hertzog, and Robert Wash, vesting against the
parties named the title in the said land.

After setting out the above chain of title, it is then
averred that said Samuel McRee, on the 23rd day of March,
1844, filed his bill in chancery in the circuit court of St.
Louis county, against the heirs of Wilt, the object of it
being to have vested in him the legal title to the said land
located under the said certificate No. 150. It is then
averred that he founded his claim to the relief he asked on
the deed from Henry Clay to Anne McRee, James F. Mc-
Ree and Samuel McRee, and on the deed from said Anne
McRee and James F. McRee and wife to the said Samuel.
It is also averred that such proceedings were therein had,
that a decree was made, vesting all the right, title and
interest of defendants in and to the said 640 acres in said
Samuel McRee. It is then averred that the deed of said
Samuel, acknowledged in October, 1839, conveying sixty-

four acres of the said 640 acres to Pierre Chouteau operated as an equitable assignment to said Pierre of so much of said certificate No. 150 as covered said sixty-four acres, and that the title secured by said Samuel by virtue of the said decree, to the extent of the said sixty-four acres enured to the benefit of said Chouteau and invested him in equity with the title thereto. It is then averred that said Chouteau entered into the possession of said sixty-four acres in 1824, and remained uninterruptedly in possession till 1860, with the knowledge of said McRee and Gibson. It is then averred that said McRee died in 1849, leaving a will, in which he devised all his estate to Mary McRee, his widow. It is also averred that the patent which issued in 1862 to said Mary McRee, as the legal representative of J. Y. O'Carroll, to the 640 acres located by said certificate 150, in so far as it covered the sixty-four acres in controversy, was issued in fraud of plaintiffs' rights and was procured to be issued by the covin and fraud of said Mary and Gibson, and that said Gibson held the sixty-four acres, part of said tract, conveyed to him by Mrs. McRee, in trust for plaintiffs and to their use, and asks the court so to decree upon final hearing.

Defendant Gibson, in his answer, after denying specifically the allegations in the petition, set up in bar of plaintiffs' action, that he commenced a civil action in the St. Louis land court, in September, 1862, against Pierre Chouteau, (and afterward continued it against these plaintiffs, his devisees,) to establish his title and recover possession of the said sixty-four acres; that said Chouteau and others put in issue, and set up, and had the benefit of the same claim to the equitable right or title that is set up and relied upon in their petition, that the same issue as to the equitable title was involved in that suit which is involved in this suit; that judgment was rendered for the plaintiff by the said land court, which, on appeal to the Supreme Court, was affirmed, where, upon a consideration of the same documentary evidence in that case, which plaintiffs now

set up in their petition, it was adjudged that said Chouteau had neither legal nor equitable claim to said sixty-four acres of land.   This defense is set up at great length and with great particularity in said answer, but it is substantially as above stated.

To this answer a replication was filed, putting in issue the new matter therein stated.

Upon the trial plaintiffs put in evidence all the deeds and documentary evidence set out in the petition (and referred to in our statement of the case) in support of his equitable claim; and defendant Gibson, in support of his plea of *res judicata*, put in evidence the record of the suit of *Gibson v. Chouteau et al.*, commenced in the St. Louis land court in 1862, the transcript of the record of said cause upon the appeal from the judgment of said court, transcript of record of the cause on appeal to the Supreme Court of the United States, and also the briefs and argument of counsel.   The first question, therefore, which the record before us presents is, whether or not the equitable claim, right and title set up in plaintiffs' petition was passed upon in the said suit of *Gibson v. Chouteau*, commenced in the St. Louis land court in 1862, so as to be *res judicata*.

In order to a proper solution of the question propounded, resort must be had to the record of said former suit, and the judgment of the land court and this court rendered upon it.

It appears from the petition in said cause that it was an action of ejectment to recover possession of the same sixty-four acres claimed by plaintiffs in this suit.   The petition differed from the usual form of a petition in such actions, in this, that plaintiff averred he based his right to recover upon the patent which issued to Mary McRee in 1862 covering said land, and a deed from her to Gibson conveying the said land.

In the answer to this petition, Chouteau set up among other defenses, an actual, open, adverse, notorious possession of the premises sued for, for more than ten years pre-

vious to the institution of the suit, and pleaded the statute of limitations as a bar to plaintiff's action. It is also averred in said answer "that all the right, title and interest of plaintiff, which he claims to have in said premises, and all and every deed which he may produce and show in support of said title and claim were acquired by said plaintiff as agent or attorney of and for the defendant, and defendant says each and every deed for said premises or any part thereof under which plaintiff claims, or pretends to claim, said premises, were procured and obtained by said plaintiff while acting as agent for this defendant, and such deeds were fraudulently and wrongfully made to said plaintiff, by his procurement, in violation of the rights of this defendant, instead of to this defendant, as of right they should have been, and defendant denies that by virtue of any such deed or conveyance in any form, any right or title vested, or could vest, in the said plaintiff, to the prejudice of this defendant; and defendant denies that plaintiff can or ought to maintain this suit, or be allowed to use such deeds in evidence in support of his pretended claim to the premises."

The record further shows that defendant Chouteau, over the objection of plaintiff that the answer was not specific enough to let the evidence in, was allowed to put in evidence, in support of his equitable defense, every deed and all the documentary evidence which is set up in the petition in the present case as the basis of plaintiffs' equitable claim. It also shows that the judgment of the said land court was adverse to defendant and in favor of plaintiff. It also shows that upon Chouteau's appeal from said judgment to this court, the action of the land court in holding that defendants had not established either a legal or equitable claim to the land in controversy, was in that respect affirmed, but that its action in not sustaining defendants' plea of the statute of limitations was erroneous, and reversed the judgment for that reason. 39 Mo. 536. It also appears that on appeal from said judgment to the Supreme

Court of the United States it was held by that court that
this court committed error in holding that the statute of
limitations of this State began to run before the patent to
the land in controversy had issued from the government,
and for that reason reversed the judgment of this court,
and remanded the cause for further pro.eedings.  *Gibson
v. Chouteau*, 13 Wall. 92.  It also appears that when said
cause was again taken up by this court, in the disposi-
tion of it, it was observed by Judge Wagner, who deliv-
ered the opinion, that " when this cause was in this court
at its October term, 1866, we then decided the whole case
in favor of respondent, with a single exception, namely,
the statute of limitations.  Upon that question we ruled
against him, and held that he was barred.  On that single
point he appealed to the Supreme Court of the United
States, and that tribunal reversed this court, and he now
presents his motion asking that judgment be entered in
his favor.  There is absolutely nothing more for this court
to decide or for any court to retry, that is not *res judicata.*
Upon every question of State jurisdiction we held for him,
and the Supreme Court of the United States has decided
the remaining point coming within Federal cognizance for
him, and we, therefore, think he is entitled to his judg-
ment."  Gibson having entered a remittitur for certain
portions of common field lots, with which the patent under
which he claimed interfered, the judgment of the St. Louis
land court was affirmed.  *Gibson v. Chouteau*, 50 Mo. 85.

Thus was the cause of *Gibson v. Chouteau* finally ended,
and the questions decided in that case and raised by the
pleadings as construed by the court, cannot be re-agitated
in another suit.  *Nemo bis debet vexari pro eadem causa.*
"An allegation of record upon which issue has once been
taken and found, is, between the parties taking it and their
privies, conclusive according to the finding thereof, so as
to estop the parties respectively from again litigating that
fact once found."  *Outram v. Moorewood*, 3 East 346.  "A
judgment *inter partes* is always admissible for or against

parties or privies when the same subject matter is a second time in controversy between the same persons or parties claiming under them. Probably, indeed, it will not be regarded as quite conclusive of the rights in dispute unless it be pleaded as a matter of estoppel. The conclusive effect of judgments respecting the same cause of action and between the same parties, rests upon the just and expedient axiom, that it is for the interest of the community that a limit should be opposed to the continuance of litigation, and that the same cause of action should not be brought twice to a final termination." 2 Taylor on Ev., § 1497, p. 1408. "It matters not, in regard to the conclusive effect of a judgment, whether the plaintiff in the second action was the plaintiff or defendant in the first, provided the point in dispute be the same in both suits." 2 Taylor on Ev., § 1510, p. 1422. "It has been laid down as a general rule, which is recognized alike in all the courts, that when a given matter becomes the subject of litigation in, and adjudication by, a court of competent jurisdiction, the court requires the parties to that litigation to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of matter which might have been brought forward as part of the subject in contest, but which was not brought forward, only because they have from negligence, inadvertence or even accident omitted a part of their case. The plea of *res judicata* applies, except in special cases, not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties exercising reasonable diligence might have brought forward at the time." 2 Taylor Ev., p. 1425, § 1513. It has recently been held in North Carolina in the case of *Tuttle v. Harrill:* "Except in special cases the plea of *res judicata* applies not only to points upon which the court was required to pronounce judgment, but to every point

which properly belonged to the subject of the issue, and which the parties exercising reasonable diligence might have brought forward." 85 N. C. 456. "When can a matter be said to be *res judicata?* And what is the extent of the doctrine known in the books as *stare decisis?* As to the first, we understand the rule to be that a decision made in a case by the highest court empowered to pass upon it, is conclusive upon the parties to the controversy, and their privies, who are not allowed afterward to revive it in a new proceeding for the purpose of raising the same on any other question. The matter in controversy has become *res judicata,* a thing definitely settled by judicial decision, and the judgment of the court imports absolute verity. Whatever the question involved—whether the interpretation of a private contract, the legality of an individual act, or the validity of a legislative enactment, the rule of finality is the same. The controversy has been adjudged, and, once finally passed upon, is never to be revived." Cooley Const. Lim., 47. "A proposition assumed or decided by the court to be true, and which must be so assumed or decided in order to establish another proposition which expresses the conclusion of the court, is as effectually passed upon and settled in that court as the very matter directly decided." *School Trustees v. Stocker,* 42 N. J. L. 117. Giving force and effect to the above principles, we must return an affirmative answer to the question propounded.

That defendant Chouteau had the right to interpose an equitable defense to the action of Gibson, and not only 1. EJECTMENT: prevent a recovery upon establishing such pleading. defense, but would be entitled to affirmative relief if asked, there can be no doubt, for it is expressly provided in the code, that "a defendant may set forth by answer as many defenses or counter-claims as he may have, whether they be such as have heretofore been denominated legal or equitable, or both." Gen. St. 1865, p. 659, § 13. It is also provided "when in any action for the recovery of

the possession of premises, any land shall be claimed by virtue of a location in lieu of other lands injured by earthquakes, the certificate of new location granted by the recorder of land titles and the patents issued in consequence shall be only *prima facie* evidence of the title in the grantee therein named, subject to be rebutted as hereinafter provided." Gen. St. 1865, § 11, p. 375. " It shall be lawful for the adverse party to rebut such evidence by proof that the grantee in such certificate or patent named was not, at the time the same or either of them issued, the owner of the injured land, in lieu of which the said certificate or patent issued, and the title to the land located by virtue of such certificate or patent shall be determined according to the rights of the parties to the land as located by virtue thereof." Gen. St. 1865, § 12, p. 608. It cannot be doubted that Chouteau had the unquestioned right to set up in his answer to Gibson's petition any and all equitable defenses he had.

That he undertook to avail himself of this right, and to set up an equitable defense, is shown by his answer. That such defense was sufficiently set up in the answer to allow Chouteau in support of it to introduce in evidence all the deeds and documents which are recited and set forth in the petition in this suit, as the basis of their equitable claim, is shown by the action of the land court in receiving it over Gibson's objection, that the defense sought to be established by it was not pleaded with the requisite particularity and exactness; and it is also shown by the action of this court, when the cause reached it on Chouteau's appeal, in fully considering the documentary evidence offered and brought forward by Chouteau in support of his equity, and holding that it was wholly insufficient to connect him with either the legal or equitable title to the land in suit; and " that the defendants, on the evidence, had not even the equitable title, which would support an action of ejectment under the statutes of this State; they were reduced to the naked possession without the shadow of title, and

must, therefore, be considered, with reference to the documentary evidences of title, issued by authority of the United States, and with reference to the statute of limitations, as mere intruders." *Gibson v. Chouteau*, 39 Mo. 536.

But it is earnestly and forcibly argued by the learned counsel that the court misconstrued the answer, in holding 2. RES JUDICATA. that it presented the equitable defense passed upon. Though in their argument before this court it was contended by them that it did present it, it is now insisted in argument before us that it in fact did not present it. In passing upon the plea of *res judicata* the question is not whether the court decided the point involved right or wrong, but the question is, did it decide, and is the decision final? While the answer of defendants in setting up their equitable defense might have been excepted to, because of the generality of its averments, and defendants have been required to make it more specific, the most that can be said of it is, that it stated such defense defectively, and we have repeatedly held that a judgment rendered upon a petition which states a cause of action defectively, is good after verdict and will be upheld. *Frazer v. Roberts*, 32 Mo. 457; *Smith v. City of St. Joseph*, 45 Mo. 450; *Garth v. Caldwell*, 72 Mo. 622; *Edmonson v. Phillips*, 73 Mo. 57. The same rule is equally applicable to an answer as to a petition.

The requirement of particularity in a pleading is intended for the benefit of the opposing party, and if such party waives it by not taking appropriate legal steps to have the pleading corrected in this respect, and thus gives to the pleader the full benefit of his defense though defectively pleaded, he ought not, when the whole defense is actually tried as if it were in, and when judgment is pronounced upon it adversely to him, to be heard to complain that his pleading was not sufficiently specific to apprise the opposite party of his claim. An illustration of the correctness of the principle above stated may be found in that class of cases represented by the case of *Henslee v. Canne-*

4—76

*fax*, 49 Mo. 296, in which it was held that notwithstanding the provision of the code of practice which declares that all new matter set up in an answer, unless denied by replication, shall be taken as confessed, and notwithstanding the fact that no replication had been filed in the cause putting in issue the new matter set up in the answer, that the trial court erred in instructing the jury that the allegations of the answer must be taken as true for the want of a replication.   The reason given for this ruling was that the parties had conducted the trial precisely as though the reply had been made.   " They stood by and saw heavy costs accumulate in making out plaintiff's case, adding to them the cost of their own witnesses, and then asked the court to declare that their defense had been admitted from the beginning. This will not do, and courts should not allow traps to be thus sprung, although upon the inattentive." So in the case of *Slack v. Lyon*, 9 Pick. 62, Parker, C. J., observed that if " the parties go to trial upon a full knowledge of the charge, and the record contains enough to show the court that all the material facts were in issue, the defendant shall not tread back and trip up the heels of the plaintiff on a defect which he would seem thus purposely to have omitted to notice in the outset of the controversy."

We have been cited by the learned counsel for plaintiffs to a class of cases where this and other courts of last resort have reversed their own rulings, when they have found that a rule laid down in a former decision is so unfounded in law or so mischievous in its consequences that they feel compelled to overrule it.   An instance of this is to be found in the case of *Bates v. Bates*, 13 Mo. 217, (to which, among others, we have been cited,) overruling the cases of *Shreve v. Whittlesey*, 7 Mo. 473, and *Bedford v. Bradford*, 8 Mo. 233.   A more recent instance is to be found in the case of *Boogher v. The Life Association of America*, 75 Mo. 319, in which it is held that a corporation can be sued for malicious prosecution, overruling the case of *Gullett v. The Mo. Valley R. R. Co.*, 55 Mo. 315, which laid down

the rule that a private corporation was not liable in an action for malicious prosecution. But while this may be, and is often done, the right of a party to re-agitate and sue again upon the same cause of action adjudged in a case subsequently overruled in another case between other parties or the same parties upon another cause of action, is concluded and forever gone. And we have been unable to see the relevancy of the class of cases to which we have been cited, of which the case of *Bates v. Bates* is one.

If they have been referred to, to establish the proposition (assumed by counsel in argument) that the doctrine of *res judicata* does not apply to a court of last-resort, they are wholly ineffectual for that purpose, and the answer to the proposition assumed may be found in Bigelow on Estoppel, page 16, where it is said : " It seems hardly necessary to state that a judgment of a court of last resort cannot be collaterally attacked in that or any other court ; but the point has been raised and so ruled. In *Sturgis v. Rodgers*, 26 Ind. 1, it was said : "A judgment of a court of *nisi prius* rendered under such circumstances could never be called in question collaterally before the same or any other court. It must be so, also, as to the judgment of the court of last resort when it has jurisdiction, though it mistake the law and err in its judgment. The rule is as essential in the one case as in the other to the repose of society and the stability of private rights. To say that a judgment of affirmance here, within the power of the court to render, when the parties are before the court and the case is brought within its lawful jurisdiction, is not a final end of that litigation, would be a startling doctrine, asserting that a cause can never have a final termination." For the reasons above given, the judgment of the St. Louis court of appeals in affirming the judgment of the circuit court in dismissing plaintiffs' petition or bill, is hereby affirmed, in which all concur.

*Separate Opinion.*

HOUGH, J., HENRY, J., RAY, J.—We concur in affirming the judgment in this case, on the ground that the matters now in issue have heretofore been passed upon by this court in another suit between the same parties, and have, therefore, passed *in rem judicatam.*